UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NATIONAL CITY BANK, N.A. and THE )
PNC FINANCIAL SERVICES GROUP, )
INC., )                                CV-10-034-EFS
                                     )
              Plaintiffs, )
                                     )
    vs.                              )          **ORDER ENTERING COURT'S**
                                     )          **RULINGS FROM APRIL 27,**
PRIME LENDING, INC.; RONALD D. )                **2010 HEARING**
THOMAS and JOHN DOES 1-20, )
                                     )
              Defendants. )

A hearing occurred in the above-captioned matter on April 27, 2010. Christopher Fisher, Isaac Eddington, Joseph Castrodale, Thomas Cochran, and Matthew Daley appeared for Plaintiffs; James Breitenbucher and Karen Jones appeared for Defendant Prime Lending, Inc. ("Prime"); and Erik Thorleifson and Patrick Kirby appeared for Defendant Ronald Thomas ("Thomas"). Before the Court were Defendants' Motions to Dismiss (Ct. Recs. 26 & 29), in which they move to dismiss several of Plaintiffs' claims and to strike the request for punitive damages, and Plaintiffs' Motion for Leave to Amend (Ct. Rec. 72). For the reasons given below, the Court grants Defendants' motions in part and grants Plaintiffs' motion as revised.

Order 1-

### I. Background[1]

Plaintiff National City Bank ("National City") is a nationwide banking group based in Ohio whose operations include mortgage lending. Its headquarters for its Eastern Washington and Idaho operations were in Spokane, Washington, and over several years it steadily built up its business in the region. Last year, National City merged with PNC Financial Services Group, Inc. ("PNC"), and PNC is the surviving company.

Thomas was National City's Spokane Market Manager for seven years. In that position, he managed several National City offices in the Northwest and was among the most senior managers in the region. As a reward for his service, in 2007 Thomas accepted some National City stock subject to a Restricted Stock Agreement. Both the Restricted Stock Agreement and Thomas's Bank Manager Compensation Agreement prohibited Thomas from recruiting National City employees, using National City's trade secrets, and soliciting National City customers for some time after leaving employment with National City.

Prime is a mortgage lender based in Dallas. In the spring of 2009, Prime was trying to enter the Spokane market. Around that time, Thomas met with Prime to discuss future employment opportunities, and, after agreeing to join Prime, began recruiting National City Bank employees for Prime. Thomas arranged for almost all of National City's Spokane employees to resign on July 14,

---

[1] When deciding a motion to dismiss, the Court must accept all the Complaint's material factual allegations and draw any reasonable inferences therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

Order 2–

2009. Thereafter, they began working for Prime. This mass resignation effectively shut down National City's operations in the region and handed them over to Prime. Thomas remained a National City employee for three weeks after his subordinates left, pretending he did not know in advance that the employees planned to leave. Meantime, he worked surreptitiously for Prime while still on National City's payroll. He was part owner of the LLC that owned National City's office space, and he arranged to have National City move out of its Spokane office. He then leased the space to Prime. Finally, on August 6, 2009, Thomas resigned and joined Prime, taking with him confidential customer information and using it to solicit customers for Prime's benefit, as well as continuing to recruit National City employees from other branches.

Plaintiffs filed their Complaint in the Northern District of Ohio on September 16, 2009, alleging Defendants violated several state and federal laws. At the court's urging, the parties engaged in extensive settlement negotiations. After those negotiations failed, Defendants filed motions to dismiss for improper venue and lack of personal jurisdiction, or in the alternative, to transfer venue to this district. The court declined to decide jurisdiction and venue. Instead, it transferred the case to this Court.

## II. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell*

*Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555. In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam*, 320 F.3d at 1028.

### III. Discussion

**A.    Successive Rule 12 Motion**

Plaintiffs argue that the motions to dismiss are procedurally improper under Federal Rule of Civil Procedure 12(g)(2) because Defendants already filed motions under Rule 12(b)(2) and (3). Generally speaking, defendants must raise all defenses at the first opportunity and may not bring successive motions to dismiss. Fed. R. Civ. P. 12(g)(2); *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 998 (N.D. Ill. 2002); *United States v. Columbia Gas & Elec. Corp.*, 1 F.R.D. 606 (D. Del. 1941). A motion to dismiss for failure to state a claim is not waived if not asserted at the first available opportunity, however. Rather, a defendant may raise the defense in its answer, a motion for judgment on the pleadings under Rule 12(c), or at trial. Fed. R. Civ. P. 12(h)(2).

Judicial economy favors ignoring the motions' technical deficiencies. Defendants did not waive their defense of failure to state a claim. Rule 12(g) merely prohibits them from raising it before filing an answer because they did not raise it in their initial response under Rule 12(b). Plaintiffs do not dispute that

Defendants would simply be able to renew their motion as a Rule 12(c) motion for judgment on the pleadings after filing an answer. The Court declines to pass on this opportunity to narrow the issues because Defendants are entitled to raise these defenses even if they already filed a motion to dismiss. Nor do the motions result in prejudice or surprise. The Court finds good cause to consider them now.

**B.    Dismissal of Claims**

   **1.    Misappropriation of Trade Secrets—Uniform Trade Secrets Act ("UTSA")**

   According to Defendants, Plaintiffs' trade secrets claim is inadequately pled because all the information alleged to have been taken is publicly available through title searches. Plaintiffs respond that the information Defendants misappropriated includes far more than just customer lists. Defendants allegedly took customers' confidential information, identities of prospective customers, and mortgage loan applications.

   Washington adopted the UTSA to govern claims for trade secret misappropriation. RCW 19.108. The UTSA defines a trade secret as

   information. . . that:

   (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

   (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4). A trade secret requires effort and expense in compilation. *Ed Nowogroski Inc., Inc. v. Rucker*, 137 Wn.2d 427, 438–39 (1999). Generally, a confidential customer list is a trade secret. *Thola v. Henschell*, 140 Wn. App. 70, 78 (2007). But the

Order 5-

customer list is not a trade secret if it is readily ascertainable from a public source. *See Boeing v. Sierracin Corp.*, 108 Wn.2d 38, 49–50 (1987); *MP Med. Inc. v. Wegman*, 151 Wn. App. 409, 421–22 (2009); *West v. Port of Olympia*, 146 Wn. App. 108, 120 (2008); *Spokane Research & Def. Fund v. City of Spokane*, 96 Wn. App. 568, 578 (1999); *Precision Moulding & Frame, Inc. v. Simpson Door Co.*, 77 Wn. App. 20, 36 (1995). Whether information is a trade secret is a factual determination. *Ed Nowogroski*, 137 Wn.2d at 436.

Dismissal of this claim is inappropriate. Because existence of a trade secret is a factual determination, and because the confidential information allegedly misappropriated was not limited to publicly-available customer lists, Plaintiffs sufficiently alleged trade secret misappropriation. The Complaint says that Thomas had access to and agreed not to disclose proprietary information such as "mortgage loans, mortgage loan applications, customers, customer lists, customer files, mortgage loan pipeline reports, sales manuals, policy and procedure manuals and other internal reports. . . ." (Ct. Rec. 21 Ex. 1 at 9.) As Plaintiffs note, the Complaint alleges Thomas took, and Prime profited from, other information besides the customer lists that Thomas and Prime could have compiled by spending a few hours at the County Auditor's office and sifting through public records. Accordingly, Defendants' motion is denied with respect to this claim.

**2.    Computer Fraud and Abuse Act ("CFAA")**

Defendants argue that Ninth Circuit case law bars Plaintiffs' CFAA claim. Thomas notes that National City had a similar claim dismissed in an unrelated case in the Western District of Washington, and posits that collateral estoppel precludes the

claim. Additionally, Defendants say that Plaintiffs did not adequately plead the required loss amount during the relevant period.

The CFAA prohibits accessing a protected computer[2] without authorization and exceeding authorized access on a protected computer. 18 U.S.C. § 1030(a). The Ninth Circuit held that an employee who is allowed to use the employer's computer for work never accesses it without authorization for the purposes of CFAA, even if the employee does so to further personal interests. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009). In *Brekka*, an employee consultant e-mailed himself documents he obtained and created while working for LVRC, his employer. *Id.* at 1129-30. Eventually, the consultant left LVRC, and LVRC was concerned he was using those documents to compete with it. *Id.* at 1130.

The court decided that disloyal employees do not have sufficient notice that they could be liable for civil CFAA violations. *Id.* at 1134-35. Because the CFAA is a criminal statute, the Ninth Circuit interpreted the CFAA through the lens of the rule of lenity, which requires interpretation in accordance with ordinary usage. An ordinary person would understand that an employee who is permitted or required to use a computer for work

---

[2] The term "protected computer" includes any computer used in or affecting interstate or foreign commerce or communication. 18 U.S.C. § 1030(e)(2)(B). Thus, any computer connected to the internet is a protected computer. Kyle W. Brenton, *Trade Secret Law and the Computer Fraud and Abuse Act*, 2009 U. Ill. J.L. Tech. & Pol'y 429, 433 (2009).

Order 7-

does not access the computer without technological authorization, even if the employee does so to compete with the employer. *Id.* The employee's subjective state of mind, the purpose for which the employee accesses the documents, and whether the employee breaches a state law duty of loyalty to the employer by so doing are irrelevant to whether he exceeds the scope of authorization. *Id.* at 1135 n.7.

*Brekka* squarely forecloses Plaintiffs' CFAA claim. The facts as alleged are indistinguishable from *Brekka* in relevant respects. Both in this case and in *Brekka*, employees allegedly took confidential information from computers that they were permitted to use for work and used it to compete with the employer.[3]

Finally, Prime is not vicariously liable under the CFAA even if we assume that Prime directed National City employees to take information from National City's computers. Those employees were authorized to access the information. If the agent who accessed the

---

[3] The cases from other jurisdictions that Plaintiffs cite do not persuade the Court because they conflict with the controlling law in this circuit. For instance, the authority relied on by the court in *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 767 (N.D. Ill. 2009), was specifically rejected by the Ninth Circuit in *Brekka*. 581 F.3d at 1134. Similarly, *United States v. John*, 597 F.3d 263, 273 (5th Cir. 2010), a criminal case, held that an employee who uses the employer's computers to perpetrate criminal fraud is liable under the CFAA, but also recognized that the Ninth Circuit interprets the statute differently. To the extent *John* is persuasive authority, it does not apply in this situation because Plaintiffs do not allege Defendants committed any crime or fraud.

Order 8-

computer had authorization, the principal who ordered the download cannot be liable either. *See Nat'l City Bank, N.A. v. Republic Mortgage Home Loans, LLC*, No. C 09-1550 RSL, 2010 WL 959925, at *5 (W.D. Wash. Mar. 12, 2010); *Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *6-*7 (N.D. Ill. Sept. 27, 2005) (holding that an employer may be vicariously liable for urging its employee to exceed authorized access on a computer for the employer's benefit). This claim is properly vindicated under the trade secret laws. Accordingly, Defendants' motion to dismiss is granted in part: Plaintiffs' CFAA claim is dismissed with prejudice

### 3. Tortious Interference with Business Expectancy

Defendants urge that Plaintiffs had no valid expectation that their at-will employees would continue to work for them, so they have no claim for tortious interference with a business expectancy. A cause of action for tortious interference with a business expectancy under Washington law has five elements: 1) a valid business expectancy; 2) defendants had knowledge of the relationship; 3) defendants intentionally interfered, causing a breach of the relationship; 4) defendants interfered for an improper purpose or using improper means; and 5) damages. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997) (citing *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wn.2d 120, 137 (1992); *Roger Crane & Assocs. v. Felice*, 74 Wn. App. 769, 777-78 (1994)). A business expectancy exists when there is a relationship between parties contemplating a contract. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 353 n.2 (2006). This requires only a reasonable expectancy that the contract will come to fruition, and not a completed contract.

*Scymanski v. Dufault*, 80 Wn.2d 77, 84–85 (1972); *Broten v. May*, 49 Wn. App. 564, 569 (1987).

Washington courts have held that at-will employees have no business expectancy in continued employment. *Woody v. Stapp*, 146 Wn. App. 16, 24 (2008). At-will employment clearly limits an employee's expectation of job security. *Raymond v. Pac. Chem.*, 98 Wn. App. 739, 747 (1999), *overruled on other grounds by Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349 (2001).

The Court holds that Plaintiffs did not have a business expectancy in their future relationship with their at-will employees. It is undisputed that those employees could quit at any time. Although Plaintiffs had valid *contracts* with those employees, Plaintiffs also sue for tortious interference with contract. Accordingly, Defendants' motion to dismiss is granted in part: Plaintiffs' tortious interference with business expectancy claim is dismissed with prejudice.

### 4. Corporate Raiding

The Court agrees with Defendants that "corporate raiding" is not a recognized cause of action under Washington law. Research revealed no Washington authority discussing a cause of action for corporate raiding, and Plaintiffs provided none. The conduct that forms the basis for this claim may be vindicated under other theories.

### C. Motion to Strike Punitive Damages

Defendants argue that punitive damages are prohibited because Washington law applies to Plaintiffs' tort claims. Plaintiffs urge that Ohio law applies, or if not, Idaho law applies to some claims, and punitive damages are permitted for those claims.

To resolve this dispute, the Court must determine which state's law applies to this case. The Restricted Stock Agreement and Bank Manager Compensation Agreement between National City and Thomas included a clause indicating that they are governed by Ohio law. The parties agree that the contract claims are governed by Ohio law, but dispute whether Ohio or Washington law applies to the tort claims.

A federal court sitting in diversity jurisdiction[4] must apply the forum state's choice of law rules. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). When a case is transferred between districts, the court must apply the transferor state's choice of law rules, unless the case was transferred for improper venue or lack of personal jurisdiction. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965-67 (9th Cir. 1993); *Tel-Phonic Servs. Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1141 (5th Cir. 1992). In this case, the Northern District of Ohio did not specifically decide whether

---

[4] Initially, this case involved a federal question and pendent jurisdiction over related state law claims. With the dismissal of the CFAA claim, however, no federal question remains and the only basis for jurisdiction is diversity of citizenship. Nevertheless, the following analysis applies equally to federal question cases involving supplemental jurisdiction over state law claims. *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)); *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted).

Order 11-

personal jurisdiction and venue were proper there, and transferred "in the interest of justice and upon the agreement of all parties."

It is unnecessary to decide which state's conflict of law provisions apply because there is no conflict of laws. Under either Washington or Ohio law, Washington law applies to the tort claims and Ohio law applies to the contract claims. The courts of both Ohio and Washington adopted the Restatement of the Law (Second) Conflict of Laws § 187(2) to determine whether the parties' contractual choice of law clause is valid. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 694 (2007); *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983). Under that section, courts honor the parties' contractual choice of law as long as the chosen state has some connection to the parties, there is some other reasonable basis for the choice, or application of the law of the chosen state does not violate the fundamental policy of a state with a greater interest in determination of the issue. Restatement (Second) Conflict of Laws § 187. The parties do not argue that Thomas's and National City's contractual choice of Ohio law is invalid, and the Court agrees that their choice meets the criteria.

Both Ohio and Washington law would apply Washington law to the tort claims. Courts in both states follow the Restatement (Second) Conflict of Laws § 145 and apply the tort law of the state with the most significant relationship to the occurrence and the parties. *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 259-60 (2005) (citations omitted); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). Factors to consider in determining which state has the most significant relationship include 1) the

place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 4) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflict of Laws § 145. Ohio courts also will consider the interests of the states and the parties in the application of a specific state's law. *Morgan*, 474 N.E.2d at 289.

Considering these factors, Washington has the most significant relationship to this dispute. Plaintiffs' injury occurred in Washington, Idaho, and Ohio, in that Plaintiffs lost branches in Washington and Idaho, and their business is headquartered in Ohio. The parties are domiciled in Washington, Ohio, and Texas. But all of Thomas's relevant conduct occurred in Spokane. That is where he allegedly orchestrated the scheme to move Plaintiffs' business to Prime. Also, the parties' entire relationship was centered in Washington. Taking together all the factors, Washington has a more significant connection than either Ohio or Idaho. The only connection to Ohio is Plaintiffs' domicile. And although some parts of the claim arose in Idaho because Plaintiffs' Idaho employees defected, by Plaintiffs' own admission most of the claim arose in Washington.

Moreover, even the claims arising out of Plaintiffs' losses in Idaho have a more significant relationship to Washington. The conduct causing those injuries occurred in Washington, and none of the parties is an Idaho resident. Indeed, Plaintiffs say in their Complaint that the "epicenter" of the whole scheme was in Spokane and the Spokane Valley. (Ct. Rec. 21 Ex. 2 at 4.) The purpose of

choosing a state's tort law is to apply only the law of the state with the most significant relationship to the claim. *See* Restatement (Second) Conflict of Laws § 1. Applying several states' laws to different tort claims in the same case thwarts that purpose.

Plaintiffs cite unpersuasive cases to argue that the contractual choice of law provision was intended to encompass torts. In Plaintiffs' cases, courts used a contractual choice of law provision to apply the chosen state's law to tort claims. But the language in those contracts was materially broader than the provision in this case. For example, in *Moses v. Business Card Express, Inc.*, 929 F.2d 1131 (6th Cir. 1991), the provision said that "[t]his Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan. . . ." *Id.* at 1139. The court determined that the language specifically indicated that the clause refers to both the agreement and its entire construction. *Id.* at 1139-40. Additionally, it held that because the plaintiffs' tort claims sought to avoid enforcement of the contract itself, the validity of the contract was at issue so it was necessary to apply the law specified in the contract to the tort claims as well. *Id.* at 1140.

In contrast, the Restricted Stock Agreement says it "shall be construed in accordance with, and governed by the internal substantive laws of, the State of Ohio." (Ct. Rec. 52 Ex. 3 at 5.) The Bank Manager Compensation Agreement says it "shall be governed by the laws of the State of Ohio." (Ct. Rec. 21 Ex. 2 at 5.) This language is not as all-encompassing as the language from the contract in *Moses*. It does not say that the construction of the

agreements is governed by Ohio law, just the agreements themselves. Neither do Defendants dispute that the contract itself was initially valid.

Plaintiffs also cite *K.S. v. Ambassador Programs, Inc.*, No. CV-08-243-FVS, 2009 WL 539695 (E.D. Wash. Feb. 27, 2009), in support of their position. In that case, Plaintiffs were Virginia residents and Defendants were residents of Washington. *Id.* at *2. The parties had a contract with a choice of law clause selecting Washington law, but Plaintiffs sued for tort claims in addition to breach of contract. *Id.* at *1–*2. The Court, citing Washington law holding that a contractual choice of law provision may be one element affecting the "most significant relationship" test, determined that before discovery there was insufficient evidence to decide whether Washington or Virginia law should govern tort claims. *Id.* at *2; *see also Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 159 (1987) ("*Although a choice of law provision in a contract does not govern tort claims arising out of the contract*, it may be considered as an element in the most significant relationship test used in tort cases.") (emphasis added).

*Ambassador Programs* does not persuade the Court that the contractual language encompasses torts. Washington has the most significant relationship to the torts at issue, even taking into account the contractual choice of law provision.

Washington law prohibits punitive damages awards absent express statutory authorization. *See, e.g., McKee v. AT & T Corp.*, 164 Wn.2d 372, 401 (2008); *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 575 (1996). There is no statute authorizing punitive

damages for Plaintiffs' common law claims. Accordingly, the Court grants Defendants' motion in part and strikes Plaintiffs' request for punitive damages.

**D.    Motion for Leave to Amend**

Plaintiffs move for leave to file an amended complaint. The proposed amended complaint does not add new parties or causes of action. Nor does it change the theory for recovery. It identifies certain non-parties who were allegedly involved in the wrongdoing and clarifies that the case concerns Defendants' takeover of National City branches in Washington, Oregon, Idaho, and Montana. Defendants do not consent to amendment. They claim that there is no justification for the six-month gap between filing of the initial complaint and the request for leave to amend because Plaintiffs knew about most of the new allegations from the start. Defendants say they are prejudiced by the amendments because they broaden the scope of the preliminary injunction, and the proposed amendment is futile and frivolous in light of evidence from the preliminary injunction hearing.

A district court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a). *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826–27 (9th Cir. 1979); *but see Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986) (holding that the court's discretion to deny leave to amend is especially broad when the court previously granted leave to amend). Leave to amend should be denied only when the defendant is prejudiced or the plaintiff unduly delayed in moving to amend by waiting until an advanced stage in litigation. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Prejudice exists if

Order 16-

discovery has concluded or the plaintiff acted in bad faith. *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1520 (9th Cir. 1983) (holding that the plaintiff acted in bad faith when the plaintiff requested amendment two years after filing the initial complaint and sought to invert the legal theory, the amended complaint provided no practical benefits, and it appeared that amendment was a bad-faith litigation tactic).

The Court finds good cause to grant Plaintiffs' motion for leave to amend. Plaintiffs did not delay unduly in filing the motion to amend, and amendment will not prejudice Defendants. Plaintiffs filed their motion to amend slightly over six months after filing their original Complaint. Although some expedited discovery took place before the preliminary injunction hearing, discovery is far from over. Even if Plaintiffs knew about the additional facts they wish to allege in the amended complaint at the time of the first complaint, a six-month delay is acceptable because the case is still in its early stages. *Cf. Granus v. N. Am. Philips Lighting Corp.*, 821 F.2d 1253, 1256 (6th Cir. 1987) (holding that the district court did not abuse its discretion in granting amendment of an answer eleven months after initiation of the case and after significant discovery had taken place). Plaintiffs appropriately focused their energies on settlement at first and moved to amend only after those efforts failed.

After the hearing on the motion to dismiss, Plaintiffs filed a revised motion to amend their Complaint. In the revised proposed amended complaint, Plaintiffs extend their claims to include Prime's alleged violations during the takeover of PNC's Oak Harbor, Washington branch. That switch occurred in April 2010. Defendants

oppose this amendment for two reasons. First, they assert that the claims are entirely new. Second, they claim that John Schleck's testimony at the preliminary injunction hearing shows no possible basis for claims against Prime from the Oak Harbor takeover. According to Defendants, Plaintiffs are barred by Federal Rule of Civil Procedure 11 from raising any claims related to the Oak Harbor office because such claims would be frivolous.

The Court agrees with Plaintiffs and grants leave to amend as requested. The claims are not new. In their original Complaint, Plaintiffs alleged that Prime directed a region-wide conspiracy to take over National City branches by pirating employees, and that those actions constituted tortious interference with contract, unfair competition, and civil conspiracy. The claims are thus not new at all. Plaintiffs merely extended them to an office that did not defect to Prime until after Plaintiffs filed the first version of the amended complaint.

Moreover, Mr. Schleck's testimony does not convince the Court that the amendment is futile, frivolous, or in bad faith. Mr. Schleck testified that he did not know whether Prime recruited the Oak Harbor employees or whether Defendant Thomas had anything to do with the defection in that office. (Ct. Rec. 138, Ex. 1 at 7-8.) This is no surprise, however. The expedited discovery that took place in advance of the preliminary injunction hearing did not include the Oak Harbor branch. It stands to reason that Schleck did not know anything about unlawful recruitment that may have taken place at Oak Harbor because discovery did not yet address that branch. Dissatisfied, departing employees commonly refrain from telling their supervisors about their new jobs and how they

Order 18-

1  obtained them, especially when they leave under the circumstances
2  of dubious legality that are alleged to have existed in this case.
3      It is also important to note that Defendants did not move to
4  dismiss the claims for tortious interference with contract, unfair
5  competition, and conspiracy. Those claims are legally cognizable
6  and adequately pled. Plaintiffs merely allege that the same
7  activities that underlay those claims against Prime with respect to
8  the other branches also apply to Oak Harbor. If true, those
9  allegations support claims against Prime for wrongful conduct in
10 connection with acquiring the Oak Harbor branch, as they support a
11 claim for similar conduct with respect to other branches. It
12 remains to be seen whether the facts will support those claims.
13 Merely because Plaintiffs possessed insufficient evidence at the
14 time of the preliminary injunction hearing to show a likelihood of
15 success on the merits of all of their claims does not mean the
16 evidence does not exist and cannot be obtained through discovery.
17 Therefore, amendment is not futile.
18      Amendment will not prejudice Defendants. The only prejudice
19 Defendants claim is that the preliminary injunction's scope will be
20 expanded if the new allegations are added. Plaintiffs filed a
21 supplemental motion that clarifies that the proposed injunction
22 applies only to former employees in National City's Eastern
23 Washington and Idaho branches and the amendment does not expand the
24 requested injunction. (Ct. Rec. 128.) That supplement eliminates
25 Defendants' concerns.
26      The cases Defendants cite in which leave to amend was denied
27 are inapposite. In *Jackson*, the court upheld denial of a motion to
28 amend when the plaintiff delayed over a year and did not allege new

information gleaned through discovery in the amended complaint. 902 F.2d at 1388. Here, although Plaintiffs knew about the new allegations when they first filed, the delay period is much shorter and only limited discovery took place so far. *Cf.*, *e.g.*, *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (upholding refusal to grant leave to amend when the amended complaint did not allege legally cognizable claims); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (holding that amendment should not be granted if it is requested in bad faith, would cause undue delay, or is employed as a dilatory tactic, and refusing to grant leave to amend to include facts known from the time the plaintiffs first filed their complaint); *Sweaney v. Ada County*, 119 F.3d 1385 (9th Cir. 1997) (holding that leave to amend need not be granted when the proposed amended complaint includes no allegations that amount to legal violations). Plaintiffs' proposed amendment is a good-faith attempt to include all relevant conduct in their Complaint. Given the excusable delay and lack of prejudice, the Court grants Plaintiffs' motion.

### IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Prime's Motion to Dismiss in Part and Strike Punitive Damages **(Ct. Rec. 29)** is **GRANTED AND DENIED IN PART.** Plaintiffs' claims for CFAA violations, tortious interference with a business expectancy, and corporate raiding are **DISMISSED with prejudice.** Plaintiffs' claim for punitive damages is **STRICKEN.**

2. Defendant Thomas's Motion for Joinder **(Ct. Rec. 25)** and Motion to Dismiss CFAA Claims **(Ct. Rec. 26)** are **GRANTED.**

3. Plaintiffs' Motion for Leave to File First Amended Complaint **(Ct. Rec. 72)** and related Motion to Expedite **(Ct. Rec. 68)** are **DENIED as moot**. Plaintiffs' Revised Motion for Leave to File First Amended Complaint **(Ct. Rec. 133)** is **GRANTED**. Plaintiffs shall file an Amended Complaint no later than August 20, 2010.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel.

ORDERED this ___19th___ day of July 2010.


_____
S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge