THOMAS D. COCHRAN, WSBA 5910
MATTHEW W. DALEY, WSBA 36711
WITHERSPOON KELLEY
422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201
Phone: (509) 624 5265
Fax: (509) 458 2728
Email: tdc@witherspoonkelley.com
       mwd@witherspoonkelley.com

ROBERT P. DUCATMAN, *Pro Hac Vice*
MEREDITH M. WILKES, *Pro Hac Vice*
ANTHONY T. JACONO, *Pro Hac Vice*
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Phone: (216) 586-3939
Fax: (216) 579-0212
JONES DAY
Email: rducatman@jonesday.com
       mwilkes@jonesday.com
       atjacono@jonesday.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON, AT SPOKANE

| | |
|---|---|
| NATIONAL CITY BANK, N.A. and THE PNC FINANCIAL SERVICES GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME LENDING, INC.; RONALD D. THOMAS and JOHN DOES 1-20,<br><br>Defendants. | Case No. 2:10-cv-00034-EFS<br><br>REPLY TO THOMAS' OPPOSITION TO PLAINTIFFS' FED.R.CIV.P. 59(e) MOTION<br><br>JURY TRIAL DEMANDED<br><br>**Set for Hearing:**<br>**September 30, 2010 at 6:30 p.m.** |

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 1

# I. INTRODUCTION

In his Opposition, Defendant Thomas never discusses -- indeed, never even mentions -- the one decision of the Supreme Court of Ohio that addresses the effects of a merger under Ohio law. *ASA Architects, Inc. v. Schlegel*, 75 Ohio St. 3d 666, 670 (1996).[1] In that case, the Court made it clear that the merger statute is to be applied without judicial gloss regarding the type of contracts at issue. Despite the unequivocal language in *ASA Architects*, Thomas nonetheless asserts that covenants not to compete are "different." That position finds no support in precedent of the Supreme Court of Ohio in the context of a statutory merger. Indeed, the most that Thomas can muster to support his position is three unreported decisions and the *Michael's* case. Based on this Court's rules, the unreported cases should not have been cited, and cannot provide a basis for the Court's decision. *See* Local Rule 7(g)(2)). But even if they could, one of the three involves an asset purchase, and is thus irrelevant. The other two do not hold what Thomas argues they do.

Thomas' Opposition also ignores the importance of the precedential nature of the issue before this Court. The question regarding the effect of a merger on a surviving company's right to enforce contracts entered into by a constituent entity is a central issue in corporate merger law. It should not be brushed aside by this Court as

---

[1] The *ASA Architects* case is attached as Exhibit A pursuant to Local Rule 7(g)(3).

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 2

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Thomas urges by simply labeling it as "different" than other contracts based on a single decision of a district court. In view of the *ASA Architects* decision and the importance of the issue in Ohio to corporate mergers, if there is any doubt, the question should be decided by the Supreme Court of Ohio. That route is one that the Supreme Court has endorsed wholeheartedly when there is doubt about a point of state law. *See Scott v. Bank One Trust*, 62 Ohio St. 3d 39, 43 (1991) (stating, in a certification case, that the Court "strongly believe[s] in the importance of accurately applying Ohio law in federal courts.")

## II. ARGUMENT & AUTHORITY

### A.    The Right To Enforce The RSA Vested By Operation Of Law.

#### 1. The *ASA Architects* Decision Contradicts Thomas' Position.

The Supreme Court of Ohio addressed the obligations side of the merger equation in *ASA Architects*, 75 Ohio St. 3d at 673. In that case, a closely held corporation and its employees-shareholders entered into a stock purchase agreement. Schlegel, one of the shareholder-employees, entered into an employment agreement in which he agreed to sell, and the company agreed to buy, his shares of the company upon termination of his employment. In 1988, a new corporation was formed, and the old corporation was merged into the new corporation ("ASA"). Subsequently, Schlegel terminated his employment and sought to have his shares purchased by ASA.

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 3

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

ASA sought a declaration that it was not obligated to do so and argued that: (1) the merger statute did not apply to "internal" contracts; (2) its obligation to purchase the shares terminated at the time of the merger; and (3) the continued viability of the obligation to purchase the shares turned on the intent of the parties. The Ohio Supreme Court rejected all three arguments. With respect to ASA's assertion that the type of contract at issue made a difference, the Court held:

> [I]t is obvious that ASA is attempting to add language to R.C. 1701.82(A)(3) and (4) that simply does not exist. R.C. 1701.82(A)(3) and (4) do not delineate between the types of obligations owed by a constituent corporation and those obligations that are inherited as a matter of law by the surviving corporation. Hence, as the General Assembly has shown no intent to create a dichotomy between certain types of obligations that flow from a constituent corporation to the surviving corporation in a merger, this court will certainly not presume to create one. *Id.*

What Thomas is asking this Court to do is precisely what the Supreme Court of Ohio refused to do -- *i.e.*, he argues for the Court to create a dichotomy between contracts that include non-hire, non-solicitation provisions and those that do not, even though the merger statute does not do so.

This case is a mirror image of the *ASA* case. At issue are the "rights," rather than the "obligations," side of the merger statute. But the result under the statute should be the same. Just like the "obligations" side of the equation, Ohio Rev. Code Section 1701.82(A)(3) provides that the surviving entity succeeds to all rights of its

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 4

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

constituent without further act or deed. Moreover, those rights vest by operation of law. *See id.* ("Thus, we find that as a result of the merger the contractual obligations of the constituent corporation, including the stock purchase agreement, flowed, by operation of law.").

PNC, as the surviving corporation in a statutory merger, "inherited" the right to enforce Thomas' contract as a matter of law. There is no legal basis for applying a three-prong test to determine whether or not PNC has those rights. It does.

### 2. Thomas' Reliance On Three Unreported Ohio Cases Is Misplaced.

Thomas relies on four cases to support his position that an assignability analysis is appropriate in the context of a statutory merger. Three of the four are unreported and were decided before January 1, 2007. Therefore, they should not be considered by the Court. (*See* Local Rule 7(g)(2)). But even if the Court did consider them, Thomas' reliance on them is misguided.

In the first of the three -- *Cary Corp. v. Linder*, No. 80589, 2002 Ohio App. LEXIS 6375 (Ohio Ct. App. Nov. 27, 2002) -- the court was applying Pennsylvania law, and <u>all</u> of the quotes from it in Thomas' Opposition are quotes from a Pennsylvania trial court decision that were used by the Ohio appellate court solely to set forth the position of the appellee in that case. They did not represent the court's

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 5

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

position. *See id.* at **11 (noting that the appellee relies on *Joyner Sports Medicine Inst., Inc.* and then quoting from that case). The *Cary* court most assuredly did not -- as Thomas argues -- view "an asset purchase -- as opposed to a merger -- as a 'distinction without a difference.'" (*See* Thomas' Opp'n at 4 (omitting that the quotation is a quotation from the Pennsylvania trial court decision used by the Ohio court solely to set forth appellee's position)). Nor did the Ohio Court of Appeals hold what Thomas argues it did. (*See id.* (again omitting that the quotation was from a Pennsylvania trial court decision that was being quoted by the Ohio court solely to set forth appellee's position)). Indeed, the *Cary* court never reached the question of whether an assignability analysis was appropriate in the context of a statutory merger. Rather, the court's decision was based on lack of adequate consideration. *Cary*, 2002 Ohio App. LEXIS 6375, at **12. Moreover, just this year, the Third Circuit Court of Appeals rejected the position taken by the Pennsylvania trial court quoted in the *Cary* case. *Zambelli Fireworks Mfg., Co. v. Wood*, 592 F.3d 412, 422-23 (3d Cir. Jan. 5, 2010). In short, the *Cary* case provides no support whatsoever for Thomas' position.

The second, *The Relizon Co. v. Shelly J Corp.*, 2004 Ohio App. LEXIS 6390 (Ohio Ct. App. Dec. 17, 2004), involved a sale of assets -- not a merger. Thus, the quotation that includes the word "merger" upon which Thomas relies is dicta and played no role in the court's decision. (*See* Thomas' Opp'n at 5). Indeed, the acquiring company, Relizon, recognized that, because it purchased the assets of

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 6

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

another company, the issue was one of assignability. *See id.* at \*6-7. Assignability is not at issue in a statutory merger.

The third -- *C.A. Litzler Co. v. Libby*, No. CA-8512, 1991 Ohio App. LEXIS 3982 (Ohio Ct. App. Aug. 12, 1991) -- involved a merger. And while the decision does use the term "assignment," the court's analysis is limited to those factors that a court considers in determining whether a covenant is reasonable. The court did not undertake the three-prong "assignability" analysis used by this Court. Indeed, the word "intent" appears nowhere in the decision.[2]

### 3. The *Michael's* Case Does Not Address The *ASA Architects* Decision And Was Wrongly Decided.

---

[2] If intent mattered -- and it should not -- Thomas ignores that the Long Term Cash and Equity Incentive Plan Effective January 1, 2005, which is the Plan that governs Thomas' RSA, provides that it is binding upon and inures to the benefit of the Corporation, its successors and assigns. (See Exhibit C to Daley Declaration filed with Plaintiffs' Rule 59(e) Motion). Under Ohio law, in the absence of ambiguity, intent resides in the language used in the contract. *Shifrin v. Forest City Ent.*, 64 Ohio St. 3d 635, 638 (1992). Here, there is no ambiguity in the language of the agreement. Thus, what Thomas now says he did or did not intend is irrelevant.

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 7

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

The only case of the four that actually holds what Thomas asserts it does is *Michael's Finer Meats, LLC v. Alfery*, 649 F. Supp. 2d 748 (S.D. Ohio 2009). That decision, however, is devoid of any analysis as to why the Ohio statutory merger law did not vest the surviving corporation with all of the rights of each constituent entity by operation of law. The court never mentions *ASA Architects*, and it blurs the distinction between a merger, in which assignment is irrelevant, and an asset purchase or assignment in which there must be an assignment. Thus, the court recognizes that "all property interests" passed to the surviving company by operation of law, but nonetheless held that the merger statute did not address whether a "particular contract was assignable from the outset." *Michael's*, 649 F. Supp. 2d at 753.

As the comments to the Model Business Corporation Act relating to the effects of a merger, upon which Ohio law is patterned, recognize: "**A merger is not a conveyance, transfer, or assignment**. . . . It does not give rise to a claim that a contract with a party to the merger is no longer in effect on the ground of nonassignability, unless the contract specifically provides that it does not survive a merger." 3 Model Bus. Corp. Act Ann. § 11.07, cmt. (2008) (emphasis added).

Thus, assignability is irrelevant in a merger -- a fact that the *Michael's* court failed to understand. Simply put, the case was wrongly decided, and because the surviving corporation was granted the ultimate relief it sought, it had no incentive to

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 8

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

appeal. The *Michael's* decision should not provide the basis for yet another erroneous decision.

**B.    There Are Compelling Reasons To Certify The Question Relating To Ohio's Merger Law to The Supreme Court of Ohio.**

If this Court has any doubt regarding the proper application of Ohio's statutory merger provision, it should certify the question to the Supreme Court of Ohio. Thomas provides no legitimate reason for not doing so.

First, as discussed above, the three unpublished Ohio appellate court decisions upon which Thomas relies do not support his assertion that "controlling precedent exists" on the issue. Nor does the decision in *Rogers v. Runfola*, 57 Ohio St. 3d 5 (1991). That case involved an assignment of assets -- not a merger.

Moreover, the Supreme Court of Ohio has urged federal courts to certify important questions of Ohio law -- such as the one at issue here -- to it.

> 'By allocating rights and duties incorrectly, the federal court both does an injustice to one or more parties, and frustrates the state policy that would have allocated the rights and duties differently. The frustration of the state's policy may have a more lasting effect, because other potential litigants are likely to behave as if the federal decision were the law of the state. In that way, the federal court has, at least temporarily, *made* state law of which the state would have disapproved, had its courts had the first opportunity to pass on the question.'

*Scott*, 62 Ohio St. 3d at 42 (emphasis in original) (*quoting* McCree, Foreword, 1976 Annual Survey of Michigan Law, 23 Wayne L. Rev. 255, 257 n.10 (1977).

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 9

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

The effect of erroneous decisions on lower state courts is also noted.

> To the extent that a federal court applies different legal rules than the state court would have, the state's sovereignty is diminished; as Judge McCree put it, the federal court has made state law. From the state's viewpoint, losing part of its sovereignty is no small matter, especially since a federal court's error may perpetrate itself in state courts until the state's highest court corrects it. *Id.* at 43.

That danger clearly exists here.

This Court should not rely on cases involving asset purchases and assignments to decide what the law in Ohio is with respect to mergers. Nor should it rely on a single federal district court case that fails to recognize the differences between asset purchases and mergers. The only Supreme Court of Ohio case that addresses the latter is *ASA Architects*. And if this Court questions its applicability to this case, then the proper route is certification.

**C.    Thomas Does Not Dispute That The Terms Of The Covenants Are Reasonable And That, Because They Are, A Preliminary Injunction Should Issue.**

In his Opposition, Thomas does not dispute that the terms of the non-hire and non-solicitation covenants are reasonable. Nor does he dispute that, if the covenants are enforceable, an injunction should issue. (*See* Plaintiffs' Mem. In Support, at 7-10). Therefore, if this Court determines that the right to enforce the covenants vested in PNC as a matter of law, an injunction should issue. *See id.*

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 10

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

RESPECTFULLY SUBMITTED, this 17th day of September, 2010.

| WITHERSPOON KELLEY | JONES DAY |
|---|---|
| s/ *Thomas D. Cochran* | s/ _____ |
| THOMAS D. COCHRAN | ROBERT P. DUCATMAN |
| MATTHEW W. DALEY | MEREDITH M. WILKES |
|  | ANTHONY T. JACONO |
| Counsel for the Plaintiffs | Counsel for the Plaintiffs |

REPLY TO THOMAS' OPPOSITION TO
PLAINTIFFS' FED.R.CIV.P. 59(e)
MOTION: 11

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2010,

1. I electronically filed the foregoing REPLY TO THOMAS' OPPOSITION TO PLAINTIFFS' FED.R.CIV.P. 59(e) MOTION with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **James E. Breitenbucher, Karen F. Jones, Patrick Joseph Kirby, Erik Thorliefson;** and

2. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants at the address listed below: **none.**

                    s/ Shelly M. Koegler
                    Shelly M. Koegler, Legal Assistant
                    Witherspoon Kelley
                    422 W. Riverside Ave., Suite 1100
                    Spokane, WA 99201-0300
                    Phone: 509-624-5265