THOMAS D. COCHRAN, WSBA 5910
MATTHEW W. DALEY, WSBA 36711
WITHERSPOON KELLEY
422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201
Phone: (509) 624 5265
Fax:    (509) 458 2728

Email: tdc@witherspoonkelley.com
        mwd@witherspoonkelley.com

ROBERT P. DUCATMAN, *Pro Hac Vice*
MEREDITH M. WILKES, *Pro Hac Vice*
ANTHONY T. JACONO, *Pro Hac Vice*
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Phone: (216) 586-3939
Fax:    (216) 579-0212

Email: rducatman@jonesday.com
        mwilkes@jonesday.com
        atjacono@jonesday.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON, AT SPOKANE

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION and THE PNC FINANCIAL SERVICES GROUP, INC., | Case No. 2:10-cv-00034-EFS |
| Plaintiffs, | FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND |
| vs. | |
| PRIME LENDING, INC.; RONALD D. THOMAS; and KALE SALMANS, | |
| Defendants. | |

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:1

Plaintiffs The PNC Financial Services Group, Inc. and PNC Bank, National Association (collectively "PNC") for their First Amended Complaint against Defendants Prime Lending, Inc., Ronald D. Thomas, and Kale Salmans (collectively "Defendants"), state as follows:

## BACKGROUND

1.    This is an action to recover for Defendants' unlawful acts, including breach of contract, breach of the duty of loyalty, misappropriation of trade secrets, tortious interference with contract, unfair competition, and civil conspiracy.

## PARTIES

2.    The PNC Financial Services Group, Inc. is a Pennsylvania Corporation with its headquarters at One PNC Plaza, 249 Fifth Avenue, 21st Floor, Pittsburgh, Pennsylvania, 15222.  It is the successor-in-interest to National City Corporation.

3.    PNC Bank, National Association, is a national banking association with its headquarters at One PNC Plaza, 249 Fifth Avenue, 21st Floor, Pittsburgh, Pennsylvania, 15222.  It is the successor-in-interest to National City Bank, N.A., which was the successor-in-interest to National City Mortgage Company.

4.    Prime Lending, Inc. ("Prime") is a Texas Corporation with its headquarters at 18111 Preston Rd., Suite 900, Dallas, Texas, 75252.

5.    Ronald D. Thomas ("Ronald Thomas" or "Thomas") is an individual residing at 3936 S. Eastgate Ct., Spokane, Washington, 99203.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND:2

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

6.    Upon information and belief, Kale Salmans ("Salmans") is an individual residing at 1613 Country Walk Dr., McKinney, Texas, 75071.

## JURISDICTION AND VENUE

7.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

8.    This Court has personal jurisdiction over Prime under Washington's long-arm statute, RCW 4.28.185, because Prime committed tortious acts within this state and because Prime regularly does or solicits business in this state and derives substantial revenue from services rendered in this state and has sufficient contacts with this state to subject it to this Court's personal jurisdiction.

9.    This Court has personal jurisdiction over Salmans under Washington's long-arm statute, RCW 4.28.185, because Salmans committed tortious acts within this state and because Salmans derives substantial revenue from activities in the state and has sufficient contacts with this state to subject him to this Court's personal jurisdiction.

10.    Thomas is a Washington citizen and resident and subject to this Court's personal jurisdiction.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:3

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and because this matter was transferred to this Court at Prime's and Thomas' request and with PNC's consent.

## FACTUAL BACKGROUND

**The Business of PNC**

12.     PNC is a national mortgage lender with offices across the United States, including Washington, Oregon, and Idaho.  Through its home lending division, PNC provides a full range of home finance products and services directed towards buying a home and refinancing a home and including home equity loans.

13.     Over at least the past year, Prime, its Regional Senior Vice President, Northwest Region, Salmans, and Thomas conspired to raid PNC's mortgage business in several cities across the Pacific Northwest, including Spokane, Vancouver, Oak Harbor, and Spokane Valley, Washington; Eugene and Portland, Oregon; and Boise, Fruitland, Orofino, and Lewiston, Idaho ("the Offices").

14.     The Offices have been an important part of PNC for many years, regularly producing millions of dollars in revenue per year.  Developing the Offices took years of investment and hard work to make them successful.  PNC went to great expense to develop and assemble a team of top-quality employees.

15.     Over many years, and through substantial time, effort and resources, PNC has developed confidential and proprietary trade secret information relating to

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:4

its provision of home finance products and services, including but not limited to, the strategic plans for developing and marketing PNC's products and services, mortgage loans, mortgage loan applications, customers, customer lists, customer preferences, risk tolerances, mortgage loan pipeline reports, sales manuals, policy and procedure manuals, compensation structure, employee abilities, strengths and weaknesses, and other sensitive financial reports, data, information, and documentation.

16.    Because PNC has proprietary rights in and to valuable confidential and proprietary trade secret information, it uses reasonable means to safeguard the confidential nature of such information.  Indeed, certain employees and executives who have access to PNC's confidential and proprietary trade secret information sign agreements with PNC in which they agree that they will not divulge PNC's confidential and proprietary trade secret information, nor make use of it for their own purposes or purposes of another during their employment or after their employment with PNC.

17.    The time and effort PNC has devoted to its home finance products and services, and the research and development devoted to the creation and maintenance of its confidential and proprietary trade secret information, mandates that this information not be made public or PNC will lose the valuable competitive advantage it has developed as a result of its confidential and proprietary trade secret information.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:5

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

18.     To that end, in addition to contracting with employees and executives not to use or divulge PNC's confidential and proprietary trade secret information, in consideration for employment, certain employees execute written agreements whereby they covenant not to engage in certain competing business ventures with PNC during their employment with PNC or after they leave PNC's employ.

**The PNC Merger**

19.     On October 24, 2008, The PNC Financial Services Group, Inc. and National City Corporation entered into an Agreement and Plan of Merger (the "Merger Agreement"), a true and correct copy of which is attached hereto as Exhibit 1 and by reference is herein incorporated.

20.     As set forth in Exhibit 1, under the Merger Agreement, National City Corporation merged with and into The PNC Financial Services Group, Inc.

21.     On December 30, 2008, a Certificate of Merger was filed with the Pennsylvania Department of State, a true and correct copy of which is attached hereto as Exhibit 2 and by reference is herein incorporated.

22.     As set forth in Exhibit 2, the Merger Agreement became effective on December 31, 2008, with The PNC Financial Services Group, Inc. as the surviving corporation.  As the surviving corporation, The PNC Financial Services Group, Inc. is the successor-in-interest to the property rights of National City Corporation, including but not limited to, the Restricted Stock Award Agreement ("RSA

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND:6

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Agreement") entered into between National City Corporation and Ronald Thomas and attached hereto as Exhibit 3.

23.    By virtue of the merger, The PNC Financial Services Group, Inc. is entitled to enforce all of National City Corporation's obligations as if such obligations were owed originally to The PNC Financial Services Group, Inc., including the obligations that give rise to the claims for relief set forth in this Amended Complaint.

24.    On November 6, 2009, the Comptroller of Currency issued a certification to merge National City Bank, N.A., with and into PNC Bank, National Association, a true and correct copy of which is attached hereto as Exhibit 4 and by reference is herein incorporated.

25.    As set forth in Exhibit 4, National City Bank, N.A. became merged into PNC Bank, National Association, the resulting bank's title being PNC Bank, National Association.  As the surviving corporation, PNC Bank, National Association is the successor-in-interest to the property rights of National City Bank, N.A., including but not limited to, the Compensation Agreement entered into between National City Mortgage Company and Ronald Thomas and attached hereto as Exhibit 5 ("Compensation Agreement").

26.    By virtue of the merger, PNC Bank, National Association is entitled to enforce all of National City Bank, N.A.'s obligations as if such obligations were

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND:7

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

owed originally to PNC Bank, National Association, including the obligations that give rise to the claims for relief set forth in this Amended Complaint.

**Defendant Prime**

27.     Prime, a residential mortgage lender headquartered in Texas, is a direct competitor of PNC.  Until recently, Prime had no presence in the cities in which the Offices were located.  Rather than establish themselves in those cities in a lawful manner—either by legitimately acquiring an established provider or by investing the time and resources necessary to build successful branches from scratch—Prime and Salmans, working with Thomas, reached into PNC and lifted out its entire business in those markets.  In doing so, Prime has instantly established itself as a mature competitor at PNC's expense.

**Defendant Ronald Thomas**

28.     Ronald Thomas joined PNC in April 2002.  By 2009, he was PNC's Spokane Market Manager and was managing several other PNC offices, including offices in Boise, Idaho, and Missoula, Montana.  He was a trusted member of PNC's top management in the region, and was compensated accordingly, earning income in the high six figures.  He worked out of PNC's office at 1102 N. Monroe St., Spokane, Washington.

29.     In his capacity as a PNC manager, Thomas had access to PNC's confidential and proprietary trade secret information, including, without limitation,

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:8

the strategic plans for developing and marketing PNC's products and services,

mortgage loans, mortgage loan applications, customers, customer lists, customer

preferences, risk tolerances, mortgage loan pipeline reports, sales manuals, policy and

procedure manuals, compensation structure, employee abilities, strengths and

weaknesses, and other sensitive financial reports, data, information, and

documentation.

30.    Thomas signed an RSA Agreement, dated November 19, 2007, a true

and correct copy of which is attached hereto as Exhibit 3 and by reference is herein

incorporated.

31.    As set forth in Exhibit 3, the RSA Agreement incorporated by reference

the National City Corporation Long-Term Cash and Equity Incentive Plan Effective

January 1, 2005, a true and correct copy of which is attached hereto as Exhibit 6 and

by reference is herein incorporated.

32.    As set forth in Exhibit 6, the National City Corporation Long-Term Cash

and Equity Incentive Plan Effective January 1, 2005 is binding on any successors or

assigns of National City Corporation.  Paragraph 13.3 provides:

> This Plan shall be binding upon and inure to the benefit of the
> Corporation, its successors and assigns and each Participant and his or
> her beneficiaries, heirs, executors, administrators and legal
> representatives.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:9

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

33.    As set forth in Exhibit 3, Thomas acknowledged and agreed that he would have access to confidential and proprietary trade secret information of PNC.

34.    As set forth in Exhibit 3, Thomas agreed that he would not solicit or divert customers or potential customers of PNC with whom he had contact during his employment while employed by PNC and for a period of one (1) year thereafter.

35.    As set forth in Exhibit 3, Thomas also agreed that he would not solicit or induce employees of PNC to leave their employment while employed by PNC and for a period of three (3) years thereafter.

36.    As set forth in Exhibit 3, Thomas further agreed to keep PNC's confidential and proprietary trade secret information in strict confidence, both during and after his employment by PNC.

37.    As set forth in Exhibit 3, Thomas acknowledged and agreed that PNC's confidential and proprietary trade secret information derived independent economic value from not being readily known, that PNC used reasonable efforts to maintain the secrecy of that information, and that any retention or use of that information by Thomas after his employment terminated would constitute a misappropriation of trade secrets.

38.    As set forth in Exhibit 3, Thomas also acknowledged and agreed that the obligations set forth in Exhibit 3 are reasonable and are supported by consideration.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:10

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

39.    As set forth in Exhibit 3, Thomas agreed that injunctive relief would be available to enforce these and other provisions of the Exhibit 3.

40.    Finally, as set forth in Exhibit 3, Thomas agreed that the laws of Ohio would govern the obligations set forth in Exhibit 3.

41.    Thomas signed a Compensation Agreement, a true and correct copy of which is attached hereto as Exhibit 5 and by reference is herein incorporated.

42.    As set forth in Exhibit 5, Thomas agreed to protect, and not disclose, PNC's confidential and proprietary trade secret information.

43.    As set forth in Exhibit 5, Thomas also agreed to turn over all confidential and proprietary trade secret information immediately upon the termination of his employment.

44.    As set forth in Exhibit 5, Thomas also agreed that injunctive relief would be available to enforce the foregoing obligations of Exhibit 5.

45.    As set forth in Exhibit 5, Thomas agreed that the foregoing obligations were in addition to, not a replacement for, any other obligations he had to protect PNC's confidential and proprietary trade secret information.

46.    As set forth in Exhibit 5, Thomas also agreed not to solicit certain of PNC's employees to leave their employment while employed by PNC and for a period six (6) months thereafter.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:11

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

47.    As set forth in Exhibit 5, Thomas also agreed that, during his employment at PNC, he would render services only to PNC and would not, directly or indirectly, render any services on behalf of any other lender or other entities or negotiate, originate, or place loans with or for any other lender.

48.    Finally, as set forth in Exhibit 5, Thomas agreed that the laws of Ohio would govern the obligations set forth in Exhibit 5.

49.    At no time did PNC relieve Thomas of any of his obligations set forth in Exhibits 3 and 5.

**Defendant Kale Salmans**

50.    Kale Salmans is Prime's Regional Senior Vice President, Northwest Region.  Salmans was Thomas' primary contact at Prime.

**Prime's Raid Of The Offices**

51.    While employed at PNC, Thomas conspired with Prime and Salmans to arrange the resignation of many of PNC's loan officers and junior loan officers. Thomas also conspired with Salmans and Prime to close PNC's Monroe Street office and to lease that space to Prime.

52.    On June 3, 2009, while employed by PNC, Thomas emailed a proposed compensation plan for Prime's loan officers to Salmans.  Since the loan officers would be recruited from PNC, Prime obtained the advantage of Thomas' access to

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:12

PNC's confidential and proprietary trade secret information to design a compensation plan to attract these loan officers from PNC to Prime.

53.    While employed by PNC, Thomas also provided Salmans with the names and contact information of thirteen of his subordinate loan officers so that Prime could immediately begin making recruiting calls.

54.    On June 9, 2009, Thomas, while employed by PNC, advised Prime and Salmans on how to meet the telephone and data communication needs necessary to set up an office in Spokane.  At the same time, Thomas began providing 1102 N. Monroe—the address of PNC's office—as the anticipated headquarters for Prime's operations in Spokane.

55.    On July 14, 2009, every PNC loan officer and junior loan officer in the Spokane area resigned *en masse*.  The individuals submitting resignations at that time included Landie Chappell, Tim Christoffersen, Terri Peterson, Terry Wiyrick, Michael Quacquarini, Jeff Schutz, Julie Kenyon, Ryan Lee and Brenda England (collectively, the "Spokane Team").

56.    Subsequent resignations from former employees of the Offices have included Chad Thomas, Geoffrey Boyd, William Maxwell, Lorrie Tracy, Bobbi Hoene, and Dan Doster.

57.    The Spokane Team's July 14, 2009 mass resignation left PNC's Spokane region unable to do business.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:13

58.    Thomas feigned surprise at the Spokane Team's July 14, 2009 departure. While he stated that he wanted to stay with PNC to rebuild PNC's Spokane business, he was doing so solely to further his conspiracy with Prime and Salmans to cause harm to PNC.

59.    Shortly after the Spokane Team's departure, Thomas caused PNC's Spokane operations manager to request that PNC close the main Spokane office on Monroe Street and consolidate its operations at the smaller Spokane Valley location. PNC chose not to follow Thomas' recommendation, deciding instead to keep and attempt to repopulate the Monroe Street office.

60.    When told of PNC's decision, Thomas indicated that he believed that the landlord for the Monroe Street office was seeking to replace PNC with a new tenant. PNC learned that the prospective new tenant had already installed a new data line in preparation for moving into that space.  Subsequently, PNC learned that the intended new tenant was Prime and that Thomas had an ownership interest in the Monroe Street building.  In addition, Thomas allowed furniture and equipment to be transferred out of that office.

61.    Thomas took on managerial responsibilities for Prime while still employed by PNC.  On July 24, 2009, some of the employees Prime had hired away from PNC failed to submit their hours into Prime's payroll system as required by

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:14

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Prime.  Prime addressed this internal administrative problem by forwarding it to Thomas, telling him "this needs to be taken care of ASAP!"

62.     While still employed by PNC, Thomas used his PNC email account to collect and forward numerous customer inquiries and emails from prospective customers to Prime.  He also took a "Byte Pro" computer file containing extensive data on more than 2,300 PNC customers.  This data included not only names and addresses, but also a record of the customers' prior loans and refinancings, the location and value of their homes, and other confidential and proprietary trade secret information of great value to a competitor.

63.     Thomas left PNC's employment on August 6, 2009.

64.     Thomas is providing home financing services on behalf of Prime in competition with PNC.

65.     Upon information and belief, Thomas has used, and conspired with Prime and Salmans to use, PNC's confidential and proprietary trade secret information for his benefit, for the benefit of Salmans, and for the benefit of Prime.

66.     Given the nature of Thomas's employment with Prime, the disclosure of PNC's confidential and proprietary trade secret information is inevitable.

67.     Upon information and belief, Thomas has directly or indirectly solicited, diverted, enticed or taken away one or more of PNC's customers or potential customers with whom he had contact, involvement or responsibility during his

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:15

employment with PNC for the sale of products or services that compete with a product or service offered by PNC.

68.    Upon information and belief, Thomas has provided home financing products and services on behalf of Prime to customers and/or potential customers of PNC.

69.    Upon information and belief, Thomas has conspired with Prime and Salmans to bring about the breach of Thomas' obligations in Exhibits 3 and 5 and his duty of loyalty to PNC.

**Agreements Of Other Former PNC Employees**

70.    Like Thomas, many of the former PNC employees who were solicited by the Defendants to join Prime also signed an RSA Agreement and/or a Compensation Agreement.

71.    The RSA Agreement specifically prohibits the following: taking, disclosing and/or using the confidential and proprietary trade secret information of PNC; soliciting, diverting, enticing and/or taking away customers or potential customers of PNC with whom he had contact while employed by PNC; and soliciting and/or hiring PNC's employees.  William Maxwell signed an RSA Agreement, a true and correct copy of which is attached hereto as Exhibit 7 and by reference is herein incorporated.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:16

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

72.    The Compensation Agreements signed by William Maxwell, Geoffey Boyd, Chad Thomas, Landie Chappell, Tim Christoffersen, Terri Peterson, Terry Wiyrick, Michael Quacquarini, Julie Kenyon, Ryan Lee, Brenda England, Lorrie Tracy, Bobbi Hoene, and Dan Doster specifically prohibit the following: taking, disclosing and/or using the confidential and proprietary trade secret information of PNC; and soliciting and/or hiring PNC's employees.  True and correct copies of these Compensation Agreements are attached hereto as Exhibits 8 to 21 and by reference are herein incorporated.  The Compensation Agreement signed by Jeff Schutz prohibits taking, disclosing and/or using the confidential and proprietary trade secret information of PNC.  A true and correct copy of this Compensation Agreement is attached hereto as Exhibit 22 and by reference is herein incorporated.

73.    Upon information and belief, Thomas has directly or indirectly solicited PNC employees to leave PNC and violate the terms of their agreements with PNC, and Thomas has also conspired with Prime and Salmans to so solicit these employees.

**Defendants Were On Notice**

74.    Prime has been notified of its wrongful conduct, including its tortious raiding of PNC's employees, its inducement of those employees to violate their contractual and other duties to PNC, and its misuse of PNC's confidential and proprietary trade secret information at least since receiving a letter from Marco J.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:17

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Magnano to Cynthia S. Buhr dated August 11, 2009, a true and correct copy of which is attached hereto as Exhibit 23 and by reference is herein incorporated.

75.    PNC also provided Prime with a copy of Thomas' RSA Agreement in an email from Marco J. Magnano to Karen Jones dated August 21, 2009, a true and correct copy of which is attached hereto as Exhibit 24 and by reference is herein incorporated.

76.    Despite that notice, Prime's wrongful conduct continues.  Indeed, Prime raided PNC's office in Oak Harbor, Washington, on March 26, 2010.  On the day of their departure, the departing Oak Harbor employees destroyed PNC's records maintained in that branch.

77.    Thomas has been notified of his wrongful conduct, including his participation with Prime and Salmans in their tortious raiding of PNC's employees, his participation in the inducement of those employees to violate their contractual and other duties to PNC, his own violations of his contractual and other duties, and his misuse of PNC's confidential and proprietary trade secret information at least since receiving a letter from Marco J. Magnano dated August 11, 2009, a true and correct copy of which is attached hereto as Exhibit 25 and by reference is herein incorporated.

78.    Despite that notice, Thomas' wrongful conduct continues.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:18

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

79.     Salmans was also on notice at least as early as August 2009 and also received information from Thomas from which Salmans knew or should have known that Thomas was subject to restrictive covenants.

## COUNT ONE – BREACH OF CONTRACT
### (Ronald Thomas)

80.     PNC incorporates the allegations set forth in paragraphs 1 through 79 of the Amended Complaint.

81.     PNC has fully performed its obligations in Exhibits 3 and 5.

82.     Exhibits 3 and 5 are valid and enforceable contracts.

83.     Thomas has breached his obligations to PNC at least in the following particulars: taking, disclosing and/or using the confidential and proprietary trade secret information of PNC; soliciting, diverting, enticing or taking away current or potential customers from PNC; providing home financing products and services to customers of PNC following the termination of his employment; soliciting and hiring PNC's employees; encouraging and facilitating PNC's employees to breach their obligations to PNC; coordinating, encouraging, and facilitating Prime's solicitation of and hiring of PNC's employees; and rendering services for Prime while employed by PNC.

84.     These breaches set forth in paragraph 83 above are material.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:19

85.     Thomas' wrongful conduct is the direct and proximate cause of damage to PNC in an amount that is not now presently ascertainable, but will be established at trial.

86.     Thomas will continue to breach his obligations to PNC, and PNC will be irreparably harmed thereby unless such activities are enjoined by this Court.

### COUNT TWO – BREACH OF THE DUTY OF LOYALTY
### (Ronald Thomas)

87.     PNC incorporates the allegations set forth in paragraphs 1 through 86 of the Amended Complaint.

88.     Thomas had and continues to have a duty of loyalty to PNC not to engage in conduct which would cause PNC to sustain injury or loss.

89.     Thomas has extensive knowledge about the business of PNC and has had access to PNC's confidential and proprietary trade secret information.

90.     Thomas has, among other things, disclosed and/or used such confidential and proprietary trade secret information for the benefit of Prime and himself, and to the detriment of PNC.

91.     Thomas acted purposefully to inflict damage on PNC by, among other things, misappropriating PNC's confidential and proprietary trade secret information; and using PNC's confidential and proprietary trade secret information to lure PNC's

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:20

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

customers to Prime, thereby interfering with PNC's relationships with its customers in violation of his duty of loyalty to PNC.

92.    Thomas has also acted purposefully to inflict damage upon PNC by, among other things, soliciting PNC employees to leave PNC and work for Prime.

93.    Thomas has also acted purposefully to inflict damage upon PNC by, among other things, inducing PNC employees to violate their agreements with PNC.

94.    Thomas has also acted purposefully to inflict damage upon PNC by, among other things, working for the benefit of Prime and Salmans while employed by PNC, willfully attempting to alter PNC's lease on its main Spokane office to Prime, and making misrepresentations to PNC and failing to advise PNC as to his interactions with Prime and Salmans.

95.    The activities of Thomas constitute a breach of the duty of loyalty that he owes to PNC.

96.    The activities of Thomas have been willful, deliberate and malicious.

97.    As a direct and proximate result of the breach of the duty of loyalty set forth in paragraphs 90 to 94 above, PNC has and continues to suffer damages in an amount that is not now presently ascertainable, but will be established at trial.

98.    Thomas will continue to breach his duty of loyalty to PNC and PNC will be irreparably harmed thereby unless such activities are enjoined by this Court.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:21

## COUNT THREE – MISAPPROPRIATION OF TRADE SECRETS
### (All Defendants)

99.    PNC incorporates the allegations set forth in paragraphs 1 through 98 of the Amended Complaint.

100.    PNC owns confidential and proprietary trade secret information that provides it with a commercial advantage because it is not generally known in the industry in which PNC does business, nor is it readily ascertainable by proper means.

101.    PNC's confidential and proprietary trade secret information includes, but is not limited to, the strategic plans for developing and marketing PNC's products and services, mortgage loans, mortgage loan applications, customers, customer lists, customer preferences, risk tolerances, mortgage loan pipeline reports, sales manuals, policy and procedure manuals, compensation structure, employee abilities, strengths and weaknesses, and other sensitive financial reports, data, information, and documentation.

102.    This confidential and proprietary trade secret information was developed by PNC at substantial expense and effort over a period of many years.

103.    PNC has taken reasonable steps to protect its confidential and proprietary trade secret information, including without limitation, entering into agreements with those who have access to such information requiring that they maintain its confidentiality.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:22

104.    In his capacity as a manager at PNC, Thomas had access to PNC's confidential and proprietary trade secret information.

105.    Defendants willfully, wrongfully, and maliciously misappropriated PNC's confidential and proprietary trade secret information in violation of the law, by removing PNC's confidential and proprietary trade secret information from PNC's offices, and by using the confidential and proprietary trade secret information to compete with PNC.  Because Prime hired PNC employees to perform the same jobs they performed for PNC in the same marketplace, disclosure and use of PNC's confidential and proprietary trade secret information is inevitable.

106.    As a direct and proximate result of the wrongful conduct of Defendants Thomas, Prime, and Salmans, PNC has suffered and continues to suffer damages in an amount that is not now presently ascertainable, but will be established at trial.

107.    Defendants Thomas, Prime, and Salmans will continue their acts of misappropriation and PNC will be irreparably harmed thereby unless such activities are enjoined by this Court.

108.    The tortious conduct of Defendants Thomas, Prime, and Salmans was willful, malicious, and done in conscious disregard of PNC's rights, entitling PNC to exemplary damages and attorneys' fees.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:23

## COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACT
### (All Defendants)

109.    PNC incorporates the allegations set forth in paragraphs 1 through 108 of the Amended Complaint.

110.    The agreements attached as Exhibits 3 and 7 contain certain covenants specifically providing that during employment and for a defined time thereafter, Defendant Thomas and non-party Maxwell will not solicit, divert, entice or take away current or potential customers from PNC.

111.    The agreements attached as Exhibits 3, 5, and 7 to 21 contain certain covenants specifically providing that during employment and for a defined time thereafter, Defendant Thomas and certain other former PNC employees will not attempt to solicit or induce any PNC employee to terminate his or her employment with PNC.

112.    The agreements attached as Exhibits 3, 5, and 7 to 22 also provide that Defendant Thomas and certain other former PNC employees expressly agree to keep PNC's confidential and proprietary trade secret information in strict confidence, and that such information constitutes a trade secret, disclosure of which would constitute a misappropriation.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:24

113.    Defendants Thomas, Prime, and Salmans knew, or should have known, of the existence of these covenants in the agreements attached as Exhibits 3, 5, and 7 to 22.

114.    Prime was expressly notified of Exhibit 3 and of its tortious conduct on August 11, 2009, yet its tortious conduct has continued.

115.    Prime was provided with a copy of Exhibit 3 on August 21, 2009, yet its tortious conduct has continued.

116.    Thomas was expressly notified of Exhibit 3 and of his tortious conduct on August 11, 2009, yet his tortious conduct has continued.

117.    Salmans was also on notice at least as early as August 2009 of his tortious conduct, yet his tortious conduct has continued.

118.    Despite such knowledge, Prime and Salmans permitted, caused, encouraged and/or induced Thomas to breach the covenants contained in the agreements attached as Exhibits 3 and 5.

119.    Despite such knowledge, Defendants Thomas, Prime, and Salmans permitted, caused, encouraged and/or induced certain former PNC employees to breach the covenants contained in the agreements attached as Exhibits 7 to 22.

120.    Defendants Thomas, Prime, and Salmans have knowingly and intentionally enjoyed the economic benefits of these breaches.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:25

121.    There was no privilege or justification for the conduct of Defendants Thomas, Prime, and Salmans.

122.    By permitting, causing, encouraging and/or inducing Thomas to breach the covenants in the agreements attached as Exhibits 3 and 5, Prime and Salmans have tortiously interfered with PNC's rights under the agreements attached as Exhibits 3 and 5.

123.    By permitting, causing, encouraging and/or inducing certain former PNC employees to breach the covenants in the agreements attached as Exhibits 7 to 22, Defendants Thomas, Prime, and Salmans have tortiously interfered with PNC's rights under the agreements attached as Exhibits 7 to 22.

124.    Defendants Thomas, Prime, and Salmans engaged in the conduct complained of in paragraphs 118 to 123 above in a willful and malicious manner, with an improper motive and through improper means.

125.    As a direct and proximate result of the wrongful conduct of Defendants Thomas, Prime, and Salmans, PNC has suffered and continues to suffer damages in an amount that is not now presently ascertainable, but will be established at trial.

126.    Defendants Thomas, Prime, and Salmans will continue such wrongful conduct, and PNC will be irreparably harmed thereby unless such activities are enjoined by this Court.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:26

## COUNT FIVE – UNFAIR COMPETITION
### (All Defendants)

127.    PNC incorporates the allegations set forth in paragraphs 1 through 126 of the Amended Complaint.

128.    Prime competes with PNC.

129.    The conduct complained of above constitutes unfair competition.

130.    Defendants Thomas', Prime's, and Salmans' acts of unfair competition have been willful, deliberate and malicious.

131.    Defendants have benefited by their acts of unfair competition.

132.    As a direct and proximate result of Defendants' acts of unfair competition, PNC has suffered and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

133.    Defendants will continue their acts of unfair competition, and PNC will be irreparably harmed thereby unless such activities are enjoined by this Court.

134.    As a direct and proximate consequence of Defendants' unfair competition, PNC has been damaged in an amount that is not now presently ascertainable, but will be established at trial.

## COUNT SIX – CIVIL CONSPIRACY
### (All Defendants)

135.    PNC incorporates the allegations set forth in paragraphs 1 through 134 of the Amended Complaint.

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:27

136.    Defendants agreed and acted in combination to unlawfully raid and lift out portions of PNC's mortgage business without paying.

137.    Each defendant committed overt acts in furtherance of their common scheme as described in paragraphs 51 to 73 above.

138.    As a direct and proximate consequence of Defendants' unlawful conduct, PNC has been damaged in an amount that is not now presently ascertainable, but will be established at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants as follows:

A.    That this Court preliminarily and permanently enjoin further breaches or attempted breaches of the agreements attached hereto as Exhibits 3 and 5, prohibiting any disclosure or use in any manner by Defendant Thomas of PNC's confidential and proprietary trade secret information;

B.    That this Court preliminarily and permanently enjoin Defendant Thomas from in any manner, directly or indirectly, inducing or attempting to induce any employee of PNC to quit or abandon his or her employment or any customer to quit or abandon its relationship with PNC for any purpose;

C.    That this Court preliminarily and permanently enjoin Defendant Thomas from further breaches of his duty of loyalty to PNC;

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:28

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

D.      That this Court preliminarily and permanently enjoin further acts or attempted acts of tortious interference with the agreements attached as Exhibits 3, 5, and 7 to 22 by Defendants Thomas, Prime and Salmans;

E.      That this Court preliminarily and permanently enjoin further acts of misappropriation and unlawful competition by Defendants Thomas, Prime, and Salmans;

F.      That this Court order specific performance of the one (1) and three (3) year covenants executed by Defendant Thomas such that the covenants begin to run from the date of entry of judgment against Defendant Thomas;

G.      That this Court order Defendants to return to PNC any PNC confidential and proprietary trade secret information provided to or in the possession, custody or control of Defendants Thomas, Prime, or Salmans;

H.      That this Court order that an accounting be made for PNC's damages arising out of Defendants Thomas, Prime and Salmans' breaches of contract, misappropriation, unfair competition, tortious interference, breaches of the duty of loyalty, and civil conspiracy;

I.      That judgment be entered for PNC against Defendants Thomas, Prime, and Salmans for all compensatory and related damages and pursuant to the accounting requested in subparagraph H above;

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:29

J.    That PNC be awarded all available statutory damages, including double damages and attorneys' fees;

K.    That PNC be awarded all of the costs and fees it has incurred in connection with this action; and

L.    Such other and further relief as this Court deems is just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff hereby requests a trial by jury.

RESPECTFULLY SUBMITTED, this 6th day of October, 2010.

**WITHERSPOON KELLEY**


 *s/ Thomas D. Cochran*
THOMAS D. COCHRAN
MATTHEW W. DALEY

Counsel for the Plaintiffs


**JONES DAY**


 *s/ Anthony T. Jacono*
ROBERT P. DUCATMAN
MEREDITH M. WILKES
ANTHONY T. JACONO

Counsel for the Plaintiffs

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:30

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

# CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2010:

1.      I electronically filed the foregoing FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

        a.     Patrick Joseph Kirby (pkirby@cbklawyers.com, mhayes@cbklawyers.com);

        b.     James E. Breitenbucher (jbreitenbucher@riddellwilliams.com, mmcinnis@riddellwilliams.com); and

        c.     Karen F. Jones (kjones@riddellwilliams.com, jfader@riddellwilliams.com, jponikvar@riddellwilliams.com).

2.      I sent, via United States mail, the foregoing FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND JURY DEMAND to:

        a.     None.

                         *s/ Shelly M. Koegler*
                         Shelly M. Koegler, Legal Assistant
                         **WITHERSPOON KELLEY**
                         422 West Riverside Avenue, Suite 1100
                         Spokane, Washington 99201-0300
                         Phone:     (509) 624 5265
                         Fax:        (509) 458 2717
                         Email:      shellyk@witherspoonkelley.com

CLI-1826040

FIRST AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND DAMAGES
AND JURY DEMAND:31