UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PNC FINANCIAL SERVICES GROUP, INC.; and PNC BANK,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>PRIME LENDING, INC.; RONALD D. THOMAS; and KALE SALMANS,<br><br>                    Defendants. | NO. CV-10-34-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S RULE 56(d) MOTION** |

A hearing occured in the above-captioned matter on February 29, 2012, in Richland, Washington. Matthew Daley, Thomas Cochran, and Meredith Wilkes appeared on behalf of Plaintiffs PNC Financial Services Group, Inc. and PNC Bank (collectively, "PNC"); James E. Breitenbucher and Wesley Morrison, Jr. appeared on behalf of Defendants Prime Lending, Inc. ("Prime Lending") and Kale Salmans (collectively, "Prime Lending Defendants"); and Patrick Kirby appeared on behalf of Defendant Ronald D. Thomas. Before the Court were Mr. Thomas' Motion for Partial Summary Judgment, ECF No. 203, the Prime Lending Defendants' Motion for Partial Summary Judgment, ECF No. 204, and PNC's Motion for Leave to Conduct Discovery and for a Continuance, ECF No. 217. At the hearing, the Court granted Defendants' partial summary judgment motions and denied PNC's Rule 56(d) motion. This Order serves to memorialize and supplement the

ORDER ~ 1

Court's oral rulings.

**I.   Background**[1]

Plaintiffs PNC Bank, National Association, and PNC Financial Services Group, Inc. are both Pennsylvania corporations with their headquarters based in Pittsburgh, Pennsylvania. Plaintiff PNC Bank, National Association is the successor-in-interest to National City Corporation (hereinafter "National City"), and Plaintiff PNC Financial Services Group, Inc. is the successor-in-interest to National City Bank, N.A.

Defendant Ronald Thomas began working for National City as the company's Spokane Market Manager in April 2002. On November 19, 2007, Mr. Thomas entered into a Restricted Stock Agreement (RSA) with National

---

[1] In connection with Defendants' motions, the parties submitted Joint Statements of Uncontroverted Facts. ECF Nos. 240 & 241. The Court treats these facts as established consistent with Federal Rule of Civil Procedure 56(d), and sets these forth in this background section without reference to an ECF number. Disputed facts are supported by a citation to the record. When considering these motions and drafting this background section, the Court viewed all evidence and drew all justifiable inferences therefrom in PNC's favor and did not weigh the evidence, assess credibility, or accept assertions made by Defendants that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

ORDER ~ 2

City, which granted him shares of National City stock in exchange for certain promises.  Specifically, paragraph 12 of the RSA dictated that Mr. Thomas 1) would not solicit or divert customers of National City while in the company's employ or for one year thereafter, 2) would not solicit or induce employees of National City to leave their employment while in the company's employ or for three years thereafter, and 3) would keep National City's confidential and proprietary trade secret information confidential both during and after his employment with the company.  The RSA also incorporated by reference the National City Corporation Long-Term Cash and Equity Incentive Plan, which had been in effect since January 1, 2005.  The RSA contained a choice-of-law clause stating that it would be construed and governed in accordance with Ohio law.

On October 24, 2008, National City entered into a merger agreement with PNC Financial Services Group, Inc.  The agreement became effective on December 31, 2008, with PNC Financial Services remaining as the surviving corporation.  On November 6, 2009, National City Bank, N.A. entered into a merger agreement with PNC Bank, National Association, with PNC Bank, National Association as the surviving corporation.  Both mergers were organized under Pennsylvania and Delaware law.  Under the terms of the mergers, PNC is the successor-in-interest to the property rights owned by National City Corporation and National City Bank, N.A.

When PNC acquired National City, it wrought a number of significant changes to National City's loan origination policies.  PNC centralized National City's loan underwriting and processing, imposed a cap on loan officer commissions from "internal" refinances of loans that had

originated with National City, and prohibited branch managers from originating loans.  These changes caused National City loan officers to worry that the company's loan processing efficiency would suffer, and caused all National City employees to be concerned that their income would decline.  This concern was particularly acute among branch managers, because National City's branch managers had only earned a small fraction of their income from management, the majority coming from loan origination commissions.

Prime Lending is a mortgage lender based in Dallas, Texas.  In the spring of 2009, Prime Lending moved to enter the mortgage lending market in Spokane.  Around that time, Mr. Thomas met with Prime Lending to discuss employment and agreed to join the company.  Mr. Thomas allegedly began recruiting PNC employees for Prime Lending, arranging for almost all of PNC's Spokane employees to resign on July 14, 2009, and take jobs at Prime Lending in what Plaintiffs describe as a "raid."  This mass resignation effectively shut down National City's operations in the Spokane area.

For several weeks after the mass resignation, Mr. Thomas was in the employ of both companies, allegedly feigning both surprise at the employees' *en masse* departure and hope that he could rebuild PNC's Spokane branch.  Mr. Thomas was part owner of the LLC that owned PNC's office space, and allegedly arranged to have PNC move out of its Spokane office and be replaced by Prime Lending.  Mr. Thomas also allegedly forwarded numerous customer inquiries from PNC to his personal email address and took a computer file containing PNC's proprietary data on over 2,300 customers.  On August 6, 2009, Mr. Thomas resigned from PNC.

ORDER ~ 4

Mr. Thomas allegedly continued to recruit employees from other PNC branches while at Prime Lending.

PNC filed its Complaint in the Northern District of Ohio on September 16, 2009, alleging state and federal claims against Mr. Thomas and Prime Lending. On February 5, 2010, the case was transferred to this Court. ECF No. 21. On July 19, 2010, the Court granted Defendants' motion to dismiss several of PNC's claims and granted PNC leave to amend its complaint. ECF No. 141. On July 20, 2010, the Court denied PNC's motion for a preliminary injunction. ECF No. 142. On October 6, 2010, after the Court granted PNC's second motion for leave to amend, PNC filed its First Amended Complaint. ECF No. 181.

The First Amended Complaint asserts claims for breach of contract and breach of the duty of loyalty against Mr. Thomas, and claims for misappropriation of trade secrets, tortious interference with contract, unfair competition, and civil conspiracy against Mr. Thomas, Prime Lending, and Kale Salmans, Prime Lending's Regional Senior Vice President for the northwest region. Mr. Thomas now moves for partial summary judgment on PNC's breach of contract and tortious interference with contract claims; the Prime Lending Defendants move for partial summary judgment on PNC's tortious interference with contract claim only. PNC opposes both motions and filed a motion for leave to conduct additional discovery pursuant to Federal Rule of Civil Procedure 56(d).

**II. Discussion**

    **A.  Summary Judgment Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (internal citation omitted) (emphasis in original).

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255. This does not mean that the Court accepts as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott,* 550 U.S. at 380.

**B. Breach of Contract Claim**

PNC asserts that Mr. Thomas violated the non-compete, non-solicitation, and trade secret confidentiality provisions of the RSA by orchestrating Prime Lending's "raid" of PNC's Spokane office. In his summary judgment materials, Mr. Thomas argues that the covenants in the RSA, which were made between him and National City, are not assignable

to PNC, and thus PNC has no right to enforce them against him.

As a preliminary matter, the Court must determine what law to apply to this issue. As noted in the Court's Order Denying Plaintiffs' Motion for Preliminary Injunction, ECF No. 142 at 9, Ohio law applies because the parties reasonably chose Ohio law to govern the RSA, and when there is a change in corporate ownership, assignment of a non-compete covenant must be legal under the law that governs each individual contract regardless of which state's law applies to the merger. *See Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F. Supp. 2d 877, 887 (N.D. Ohio 2004) (applying Ohio law in assigability analysis following asset transfer from one corporation to another); *Rogers v. Runfola & Assocs., Inc.*, 565 N.E.2d 540, 543 (Ohio 1991) (non-compete agreement must be assignable to remain valid after structural change from sole proprietorship to corporation).

Under Ohio law, a non-compete covenant may be assignable even if the contract does not so specify. *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914, 917 (Ohio App. 2003). Conversely, even a contract that includes an explicit assignment clause may not be assignable. *See Murray v. Accounting Ctr. & Tax Servs., Inc.*, 898 N.E.2d 89, 92-93 (Ohio App. 2008). Whether a non-compete clause is assignable depends on 1) whether the contract's language indicates that the parties intended for the non-compete covenant to be assignable; 2) whether assignment is necessary to protect the employer's goodwill; and 3) whether assignment would create additional burdens on the employee because of the change in ownership. *Fitness Experience*, 355 F. Supp. 2d at 889; *Rogers*, 565 N.E.2d at 543; *Blakeman's Valley*, 786 N.E.2d at 918.

ORDER ~ 7

Ohio courts view non-compete clauses skeptically and construe them against the party seeking enforcement. *Fitness Experience*, 355 F. Supp. 2d at 888-89; *Lake Land Emp't Group of Akron, LLC v. Columber*, 804 N.E.2d 27, 30 (Ohio 2004).

PNC argues that a recent decision of the Court of Appeals of Ohio, *Acordia of Ohio, LLC v. Fishel*, No. C-100071, 2010 WL 5275169 (Ohio App. Dec. 17, 2010), *review granted*, 945 N.E.2d 522 (Ohio 2011), modifies the analysis set forth above, and has filed a motion asking the Court to hold Defendants' motions in abeyance until the Supreme Court of Ohio issues its ruling. In the alternative, PNC asks the Court to permit it to conduct five additional depositions with regard to the three assignability factors.

### i. *Acordia of Ohio, LLC v. Fishel*

*Acordia* is a suit by an Ohio insurance agency against four former employees and a competitor, alleging violations of non-compete agreements and misappropriation of trade secrets stemming from the employees' defection to the competitor company. *Acordia*, 2010 WL 5275169 at *1. All of the former employees signed non-compete agreements when they began their employment with Acordia but, as here, Acordia is the product of various corporate mergers, and each of the employees' non-compete agreements were signed with Acordia's predecessors. *Id.* The court of appeals' holding in *Acordia* turned on whether the two-year limitation in the non-compete agreements began to run at the time of Acordia's prior merger or at the time of the employees' resignation. *Id.* at 3. But before analyzing the time limitation in the non-compete agreements, the court did not apply the three assignability factors set forth above to

ORDER ~ 8

determine whether Acordia could enforce agreements. *Id.* Instead, noting that under Ohio's merger statute, R.C. 1701.82, a surviving entity assumes all the property interests of each constituent entity, the *Acordia* court stated that "Ohio law provides that noncompete agreements transfer by law in a merger." *Id.*

PNC argues that the Court should hold Defendants' motions in abeyance pending the decision of the Supreme Court of Ohio because, if affirmed, *Acordia*'s holding would foreclose Defendants' position as a matter of law. However, even if the appellate court's statement regarding the automatic transfer of non-compete agreements is adopted by Ohio's supreme court, it will not dispose of this case because the court applied *Ohio's* merger statute to the case before it; while the Court applies Ohio law to the construction of the RSA agreement, the mergers between National City and PNC were governed by Pennsylvania and Delaware law, and this critical aspect of *Acordia*'s assignability determination is thus absent from this case. *See id.* (citing R.C. 1701.82(A)(3)).

Accordingly, PNC's argument that the forthcoming decision in *Acordia* may preclude Defendants' motions is without merit, and PNC's request to continue Defendants' motions is denied in this regard. And because PNC's Rule 56(d) motion, ECF No. 217, does not convince the Court that it should allow PNC additional time in order to obtain additional facts essential to justify its opposition to Defendants' motions, PNC's motion is denied in toto.

### ii. Assignability Analysis

Relying heavily on the Court's ruling denying PNC's motion for a preliminary injunction, Mr. Thomas argues that all three assignability

ORDER ~ 9

factors weigh against finding that the covenants in the RSA agreement were assignable. However, findings made with regard to a court's preliminary injunction ruling do not become the "law of the case" and do not bind the court in future proceedings. S*ee Sierra On-Line, Inc. v. Phoeniz Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). And because the Court was applying a different standard when evaluating Plaintiffs' motion for a preliminary injunction, the Court analyzes the assignability factors anew.

Mr. Thomas' motion depends on the three assignability factors set forth above: 1) whether the contract's language indicates that the parties intended for the non-compete covenant to be assignable; 2) whether assignment is necessary to protect the employer's goodwill; and 3) whether assignment would create additional burdens on the employee because of the change in ownership. *See Fitness Experience*, 355 F. Supp. 2d at 889. The assignability of a particular contract is a question of law properly resolved by the court. *Id.* at 887 (citing *Managed Health Care Assoc. v. Kethan*, 209 F.3d 923, 926 (6th Cir. 2000)).

The language of the RSA does not evince an intent to make the covenants assignable. As noted in the Court's preliminary injunction ruling, the only clause in the RSA that mentions assignability or the effects of a future merger is paragraph 2, which dictates that "[a]ny additional shares of equity securities which [Mr. Thomas] may become entitled to receive by virtue of . . . a merger . . . shall be subject to the restrictions set forth herein." ECF No. 52-3 at 1. By its express terms, this language only applies to after-acquired shares of equity securities and has no bearing on the non-compete, non-

solicitation, and trade secret confidentiality covenants contained in paragraph 12. And though the RSA incorporates by reference the National City Corporation Long-Term Cash and Equity Incentive Plan, which does contain language that binds National City's successors-in-interest, that Plan neither contains nor refers to any of the covenants now at issue; the mere fact that a non-assignable contract incorporates an assignable contract does not render both assignable. Finally, PNC's assertion that this language is ambiguous, and thus creates a factual issue for trial, is unfounded; the Court's previous reference to the RSA's "ambiguity," ECF No. 142 at 10, was made in application of a different legal standard, and would not bind the Court regardless. The language of the RSA runs counter to a finding of assignability.

The second factor also disfavors assignability. Whether a non-compete agreement is necessary to protect an employer's goodwill depends on the nature of the business and the particular employee's position. *Fitness Experience*, 355 F. Supp. 2d at 890. While Mr. Thomas was a high-level, successful employee at National City, National City was not a business "which perform[ed] unique services and [was] highly dependent on a few key clients." *Id.* Rather, National City was a mortgage lender that offered a fungible service to the general public. And more fundamentally, a finding of assignability is not necessary to protect *National City*'s goodwill because it was subsumed by the merger and its brand discontinued.

The third factor, whether assignment would create additional burdens on the employee because of the change in ownership, also strongly disfavors assignment. To find that the RSA's covenants became assigned

ORDER ~ 11

to PNC as a result of the merger would at the very least mean that Mr. Thomas would be prohibited from competing against a company whose clientele and scope of operations he did not know and with which he had never signed an agreement. This would create severe additional burdens on Mr. Thomas because of the change in ownership. As noted on the record, the facts of this case clearly demonstrate why an assignability analysis is necessary to protect employees from undue burdens created by changes in the ownership of their employers.

Taken together, the three assignability factors all weigh in favor of a finding of non-assignability, and the Court grants Mr. Thomas' motion in this regard.

### C.  Tortious Interference with Contract Claim

Both Mr. Thomas and the Prime Defendants moved to dismiss PNC's claim for tortious interference with contract. ECF Nos. 203 & 204. PNC bases this claim on Mr. Thomas' and PNC's alleged interference with the non-compete, non-solicitation, and trade secret confidentiality covenants in the agreements of the PNC employees that resigned on July 14, 2009. As such, the parties appear to agree that whether this claim should be dismissed depends on whether the covenants in the other employees' RSAs were assignable to PNC. Accordingly, for the reasons discussed above, the Court finds that the other RSAs were not assignable, and grants Defendants' motions in this regard.

### D.  Conclusion

For the reasons stated above, the Court finds that there are no genuine issues of material fact that would make summary judgment improper. And because the RSA upon which PNC's breach of contract and

Case 2:10-cv-00034-EFS   Document 249   Filed 03/06/12

tortious interference with contract claims are predicated did not become assigned to PNC upon its merger with National City, the Court grants Mr. Thomas' and the Prime Defendants' motions for partial summary judgment on these claims.

For the reasons discussed above and on the record, **IT IS HEREBY ORDERED**:

1. Mr. Thomas' Motion for Partial Summary Judgment, **ECF No. 203**, is **GRANTED**.

2. The Prime Lending Defendants' Motion for Partial Summary Judgment, **ECF No. 204**, is **GRANTED**.

3. PNC's Motion for Leave to Conduct Discovery and for a Continuance, **ECF No. 217**, is **DENIED**.

**DATED** this    5th    day of March 2012.

                    S/ Edward F. Shea
                    EDWARD F. SHEA
                United States District Judge

Q:\Civil\2010\34.MSJ.lc2.wpd

ORDER ~ 13