UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION; and THE PNC FINANCIAL SERVICES GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRIME LENDING, INC; RONALD D. THOMAS; and KALE SALMANS, <br><br> Defendants. | No.  CV-10-0034-EFS <br><br> **ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER, DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT** |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs PNC Bank, National Association and PNC Financial Services Group, Inc.'s Motion for Reconsideration, ECF No. 335.  Plaintiffs ask the Court to reconsider its March 6, 2012 Order granting partial summary judgment to Defendants Prime Lending, Inc., Ronald D. Thomas, and Kale Salmans, and dismissing Plaintiffs' First and Fourth Claims.  The Court previously granted Plaintiffs leave to seek this otherwise-untimely reconsideration, ECF No. 333; Plaintiffs' contemporaneously-filed Motion for Entry of Partial Final Judgment, ECF No. 321, has been held in abeyance pending the Court's decision on the instant motion. Having reviewed the pleadings and applicable authority, the Court is fully informed and now enters the following Order.

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER, DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 1

## II.   BACKGROUND

**A.   Factual History[1]**

Plaintiffs PNC Bank, National Association (hereinafter "PNC Bank"), and PNC Financial Services Group, Inc. ("PNC Financial") (collectively, "PNC") are both Pennsylvania corporations with their headquarters based in Pittsburgh, Pennsylvania.   PNC Bank is the successor-in-interest to National City Corporation (hereinafter "National City"), and PNC Financial is the successor-in-interest to National City Bank, N.A.

Defendant Ronald Thomas began working for National City as the company's Spokane Market Manager in April 2002.   On November 19, 2007, Mr. Thomas entered into a Restricted Stock Agreement (RSA) with National City, which granted him shares of National City stock in exchange for certain promises.   Specifically, in paragraph 12 of the RSA, Mr. Thomas promised that he 1) would not solicit or divert customers of National City while in the company's employ or for one year thereafter, 2) would not solicit or induce employees of National

---

[1] In connection with Defendants' motions, the parties submitted Joint Statements of Uncontroverted Facts.   ECF Nos. 240 & 241.   The Court treats these facts as established consistent with Federal Rule of Civil Procedure 56(d), and recites these facts in this background section without further citation.   Disputed facts are supported by a citation to the record.   When considering these motions and drafting this background section, the Court viewed all evidence and drew all justifiable inferences therefrom in PNC's favor and did not weigh the evidence, assess credibility, or accept assertions made by Defendants that were flatly contradicted by the record.   *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

City to leave their employment while in the company's employ or for three years thereafter, and 3) would keep National City's confidential and proprietary trade secret information confidential both during and after his employment with the company.  The RSA also incorporated by reference the National City Corporation Long-Term Cash and Equity Incentive Plan, which had been in effect since January 1, 2005.  The RSA contained a choice-of-law clause stating that it would be construed and governed in accordance with Ohio law.

On October 24, 2008, National City entered into a merger agreement with PNC Financial.  The agreement became effective on December 31, 2008, with PNC Financial remaining as the surviving corporation.  On November 6, 2009, National City Bank, N.A. entered into a merger agreement with PNC Bank, with PNC Bank as the surviving corporation.  Both mergers were organized under Pennsylvania and Delaware law.  Under the terms of the mergers, PNC is the successor-in-interest to the property rights owned by National City Corporation and National City Bank, N.A.  When PNC acquired National City, it wrought a number of significant changes to National City's loan origination policies.  PNC centralized National City's loan underwriting and processing, imposed a cap on loan officer commissions from "internal" refinances of loans that had originated with National City, and prohibited branch managers from originating loans.  These changes caused National City loan officers to worry that the company's loan processing efficiency would suffer, and caused all National City employees to be concerned that their income would decline.  This concern was particularly acute among branch managers, because National

1  City's branch managers had only earned a small fraction of their

2  income from management, the majority coming from loan origination

3  commissions.

4      Defendant Prime Lending, Inc. is a mortgage lender based in

5  Dallas, Texas.  In the spring of 2009, Prime Lending sought to enter

6  the mortgage lending market in Spokane.  Around that time, Mr. Thomas

7  met with Prime Lending to discuss employment and agreed to join the

8  company.  In what Plaintiffs subsequently describe as a "raid," Mr.

9  Thomas allegedly began recruiting PNC employees for Prime Lending,

10 arranging for almost all of PNC's Spokane employees to resign on July

11 14, 2009, and accept employment at Prime Lending instead.  This mass

12 resignation effectively shut down National City's operations in the

13 Spokane area.

14     For several weeks after the mass resignation, Mr. Thomas was in

15 the employ of both companies, allegedly feigning both surprise at the

16 employees' *en masse* departure and hope that he could rebuild PNC's

17 Spokane branch.  Mr. Thomas was part owner of the LLC that owned PNC's

18 office space, and he allegedly arranged to have PNC move out of its

19 Spokane office and be replaced by Prime Lending.  Mr. Thomas also

20 allegedly forwarded numerous customer inquiries from PNC to his

21 personal email address and took a computer file containing PNC's

22 proprietary data on over 2,300 customers.  On August 6, 2009, Mr.

23 Thomas resigned from PNC.  Mr. Thomas allegedly continued to recruit

24 employees from other PNC branches while at Prime Lending.

25 //

26 //

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 4

**B.    Procedural History**

Plaintiffs filed suit in the Northern District of Ohio on September 16, 2009, alleging a number of state and federal claims. On February 5, 2010, the case was transferred to this Court. ECF No. 21. On July 19, 2010, the Court granted Defendants' motion to dismiss several of Plaintiffs' claims and granted Plaintiffs leave to amend their complaint. ECF No. 141. On July 20, 2010, the Court denied Plaintiffs' motion for a preliminary injunction. ECF No. 142. On October 6, 2010, after the Court granted Plaintiffs leave to amend, Plaintiffs filed the First Amended Complaint. ECF No. 181.

The First Amended Complaint asserts a variety of contract and tort-based claims against all Defendants; however, the only claims relevant for purposes of the instant motion are Plaintiffs' First Claim for breach of contract against Defendant Thomas, and Plaintiffs' Fourth Claim for tortious interference with contract against all Defendants. On January 10, 2012, Defendants moved for partial summary judgment on those claims, ECF Nos. 203 & 204, asserting that under Ohio law, the restrictive covenants contained in the RSA were not assignable from National City to PNC.[2] ECF No. 205. On March 6,

---

[2] Although Defendant Thomas and Defendants Prime Lending and Kale Salmans filed separate motions for partial summary judgment, ECF Nos. 203 & 204, respectively, only Defendant Thomas submitted the required memorandum in support of his motion. *See* ECF No. 205; *see also* LR 7.1(b) (2012) (requiring the moving party to contemporaneously file a memorandum of points and authorities or risk denial of the motion). The Court may treat Defendants Prime Lending and Kale Salmans' failure to file a supporting memorandum as consent to entry of an

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER, DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 5

1  2012, the Court granted partial summary judgment and dismissed both

2  claims.  ECF No. 249.

3      On March 28, 2012, pursuant to Federal Rule of Civil Procedure

4  59(e), Plaintiffs moved to alter or amend the Court's Order granting

5  summary judgment.  ECF No. 250.  The Court construed Plaintiffs'

6  motion as seeking reconsideration under Rule 54(b) and the Court's

7  inherent power to reconsider an interlocutory order.  After evaluating

8  the four conditions upon which reconsideration could be granted, *see*

9  *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 583-

10  86, the Court found that none of the conditions applied to Plaintiffs'

11  motion for reconsideration; the Court therefore denied Plaintiffs'

12  motion.  ECF No. 262.

13      On October 22, 2012, Plaintiffs sought leave to file a second

14  motion for reconsideration.  ECF No. 324.  Plaintiffs also moved, in

15  the alternative, for entry of partial final judgment under Rule 54(b),

16  ECF No. 321, which would allow Plaintiffs to seek an appeal of the

17  dismissal of their First and Fourth Claims.  As a basis for their

18  request to file a second reconsideration motion, Plaintiffs argued

---

20  Order denying their motion. *See* LR 7.1(e).  However, as Plaintiffs

21  did in their response to the motion, *see* ECF No. 221, at 3-4, the

22  Court instead construes the motion as relying on the same issue that

Defendant Thomas raised in his summary-judgment motion and that

23  Defendants Prime Lending and Salmans raised during the preliminary

24  injunction hearing: assignability of the RSA's restrictive covenants.

Thus, both summary-judgment motions principally rest on the argument

25  that the RSA's restrictive covenants were not (and could not be)

26  assigned by National City to PNC.

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 6

1    that an intervening change in Ohio law had caused the Court's analysis

2    of Defendants' summary-judgment motions to become erroneous.    While

3    declining at that point to fully evaluate the merits of Plaintiffs'

4    substantive argument, the Court found that an intervening change in

5    controlling law had occurred, and that the change presented a

6    sufficient basis to permit Plaintiffs to seek reconsideration.    ECF

7    No. 333, at 3.    The Court also found that judicial efficiency was best

8    served by resolving the question immediately.    *Id.*

9        With the Court's leave, Plaintiffs have since filed their motion

10   for reconsideration.    ECF No. 335.    Defendants oppose the motion.

11                            **III.  DISCUSSION**

12   **A.    Legal Standard**

13        Under Federal Rule of Civil Procedure 54(b), a district court

14   may revise an interlocutory order "that adjudicates fewer than all the

15   claims . . . at any time before entry of a judgment adjudicating all

16   the claims."    Fed. R. Civ. P. 54(b).    In that same vein, the Ninth

17   Circuit has "long recognized 'the well-established rule that a

18   district judge always has power to modify or to overturn an

19   interlocutory order or decision while it remains interlocutory.'"

20   *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th

21   Cir. 2005) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d

22   804, 809 (9th Cir. 1963)).

23        Reconsideration is an "'extraordinary remedy, to be used

24   sparingly in the interests of finality and conservation of judicial

25   resources.'"    *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877,

26   890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., Moore's

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 7

Federal Practice § 59.30[4] (3rd ed. 2000)). Motions for reconsideration should not be granted "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Rule 54(b) does not address the standards a district court should apply when reconsidering an interlocutory order, and this District has no local rule governing motions for reconsideration. This Court, however, has adopted Western District of Washington Local Civil Rule 7(h) to govern motions for reconsideration, *see* ECF No. 307, at 8, which indicates that the Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." W.D. Wash. LCR 7(h).

When reviewing motions for reconsideration of interlocutory orders, district courts in the Ninth Circuit generally apply standards of review substantially similar to those used under Rules 59(e) and 60(b). *See, e.g.*, *Nike, Inc. v. Dixon*, No. CV 01-1459-BR, 2004 WL 1375281 at *1-2 (D. Or. June 16, 2004), *aff'd*, 163 Fed. Appx. 908 (Fed. Cir. 2006); *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 583-86 (D. Ariz. 2003) (surveying relevant local rules for districts throughout the Ninth Circuit). These courts have adopted the following conditions in determining whether a motion for reconsideration may be granted:

> 1) There are material differences in fact or law from that presented to the Court and, at the time of the Court's decision, the party moving for reconsideration could not

have known of the factual or legal differences through reasonable diligence;

2) There are new material facts that happened *after* the Court's decision;

3) There has been a change in the law that was decided or enacted *after* the Court's decision; or

4) The movant makes a convincing showing that the Court failed to consider material facts that were presented to the Court before the Court's decision.

*Motorola, Inc.*, 215 F.R.D. at 586.    "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion."    *Id.*

**B.    Analysis**

In its March 6, 2012 Order, the Court found that Ohio law governs the parties' motions for summary judgment because the parties reasonably selected Ohio law to govern interpretation of the RSA's terms.    ECF No. 249, at 7.    The Court subsequently determined that, regardless of whether the RSA contained an assignability clause, the Court was required under Ohio law to conduct a three-factor assignability analysis to determine whether National City assigned the RSA's noncompete covenants to PNC through the merger.    *See Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F. Supp. 2d 877, 889 (N.D. Ohio 2004).    After weighing all three factors, the Court concluded that all factors weighed in favor of a finding that the RSA was not assignable; the Court therefore granted Defendants' motions. ECF No. 249, at 12.

In their motion for reconsideration, Plaintiffs contend that an assignability analysis does not apply here.    Plaintiffs cite to a

1    recent decision by the Ohio Supreme Court, *Acordia of Ohio, L.L.C. v.*

2    *Fishel*, 978 N.E.2d 823 (2012) ("*Acordia II*"), *vacating after reh'g* 978

3    N.E.2d 814 (Ohio 2012) ("*Acordia I*"), and argue that the *Acordia II*

4    opinion changed relevant and controlling Ohio law after this Court had

5    already granted Defendants' summary-judgment motions.    Plaintiffs

6    contend that *Acordia II* stands for the proposition that an

7    assignability analysis is inappropriate in the context of a merger,

8    and that the RSA's restrictive covenants can be enforced by PNC as if

9    PNC had stepped into the shoes of National City.    *See Acordia II*, 978

10   N.E.2d at 826.

11       Defendants do not contest Plaintiffs' interpretation of *Acordia*

12   *II*, but instead argue that *Acordia II* still permits employees to

13   challenge restrictive covenants based on "whether the agreements are

14   reasonable and whether the . . . merger[] . . . created additional

15   obligations or duties so that the agreements should not be enforced on

16   their original terms". *Id*. at 826. Defendants contend the Court has

17   previously considered the issue of reasonableness in the context of an

18   assignability analysis, and that the Court should affirm its prior

19   summary judgment on this alternative ground.

20       To address these arguments, the Court evaluates Plaintiffs'

21   motion for reconsideration in light of the Ohio Supreme Court's

22   opinions in *Acordia I* and *Acordia II*.    The Court also discusses the

23   impact of *Acordia II* on Defendants' motions for partial summary

24   judgment, as well as Defendants' suggested alternative basis for

25   granting summary judgment: the reasonableness of the RSA's restrictive

26   covenants.

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT – 10

1.    Plaintiffs' Motion for Reconsideration

In *Acordia I*, the Ohio Supreme Court confronted the question of "whether the ability to enforce an employee's noncompete agreement transfers by operation of law to the surviving company when the company that was the original party to the agreement merges with another company."    978 N.E.2d at 815.    Under factual circumstances similar to those at issue here, a merged company sued former employees for violating noncompete agreements and misappropriating trade secrets.    *Id.* at 816.    The trial court granted summary judgment, and the Ohio court of appeals affirmed, concluding that the noncompete agreements were not enforceable because the former company — the party who entered into the noncompete agreement with the employees — had been merged out of existence.    *Id.*    Although finding that the noncompete agreements "transferred automatically by operation of law . . . following the merger," the Ohio Supreme Court determined that the noncompete agreements were not enforceable by the new merged company because the former company ceased to exist and the noncompete agreements were not assignable.    *Id.* at 819.

The Ohio Supreme Court's decision in *Acordia I* was issued May 24, 2012.    On July 25, 2012, the court granted the employer's motion for reconsideration.    *Acordia of Ohio, L.L.C. v. Fishel*, 971 N.E.2d 962 (Ohio 2012).    On October 11, 2012, the court vacated its earlier opinion in *Acordia I*, "clarify[ing] the lead opinion by noting that certain language was, upon further consideration, erroneous."    *Acordia II*, 978 N.E.2d at 824-25.

//

In *Acordia II*, the Ohio Supreme Court reemphasized that "employee noncompete agreements transfer to the surviving company after a merger has been completed . . . ." *Id.* The Court reversed itself, however, with respect to the merged company's ability to enforce such agreements:

> [T]he absorbed company becomes a part of the resulting company following merger. The merged company has the ability to enforce noncompete agreements ***as if the resulting company had stepped into the shoes of the absorbed company***. It follows that omission of any "successors or assigns" language in the employees' noncompete agreements in this case does not prevent the [merged company] from enforcing the noncompete agreements.
>
> Based on the foregoing clarification, we note that any language in the lead opinion in *Acordia I* stating that the [merged company] was unable to enforce the employees' noncompete agreements as if it had stepped into the original contracting company's shoes or that the agreements were required to contain "successors and assigns" language for the [merged company] to have the power to enforce the agreements was erroneous.

*Id.* at 826 (emphasis added).

The principle, then, that this Court must extract from *Acordia II* is that an assignability analysis is the wrong approach in this case. Assignability is not a legally-relevant question when a merged company inherits the right to enforce a noncompete clause, because no purported assignment ever occurs. The merged company "step[s] into the shoes," *id.*, of the absorbed company and retains the absorbed company's power to enforce noncompete agreements. And this transfer of power occurs automatically. The ability for a merged company to enforce a noncompete clause is not contingent on either an explicit assignability provision in the agreement or an implicit assignability analysis.

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER, DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT – 12

This Court unquestionably predicated its grant of summary judgment to Defendants on assignability. The Court's March 6, 2012 Order, ECF No. 49, contains an in-depth analysis of the three assignability factors set forth in *Fitness Experience*. *See* 355 F. Supp. 2d at 889. After analyzing the three factors, the Court concluded that, "[t]aken together, the three assignability factors all weigh in favor of a finding of non-assignability," and the Court grants both motions. ECF No. 249, at 12. *Acordia II* has clarified that this assignability analysis was not pertinent to the question of whether PNC retained National City's rights to enforce the RSA's restrictive covenants against Defendant Thomas.

Reconsideration of the Court's grant of summary judgment is plainly warranted. One of the four conditions identified in *Motorola* as a basis for reconsideration is "a change in the law that was decided or enacted *after* the Court's decision," *Motorola, Inc.*, 215 F.R.D. at 586, which materially affects the validity of the Court's decision. *Acordia II* presents such a change in the law. The Supreme Court of Ohio granted reconsideration to reverse itself on this issue, and this Court is hard-pressed to refuse Plaintiffs' invitation to do the same here. The Court therefore grants Plaintiffs' motion for reconsideration.

2.   Defendants' Motions for Partial Summary Judgment

Having now granted reconsideration, the Court turns to Defendants' now-revived motions for partial summary judgment. It is now patently obvious that Defendants' motions cannot be granted on the basis that the RSA was not assignable. *Acordia II* is clear that "the

1  merged company has the ability to enforce noncompete agreements as if

2  the resulting company had stepped into the shoes of the absorbed

3  company."    978 N.E.2d at 826.    An assignability analysis is

4  irrelevant; on this point, Defendants are not entitled to summary

5  judgment.

6       Defendants' opposition to the instant motion for reconsideration

7  is premised on a collateral issue discussed in *Acordia II*: the fact

8  that noncompete covenants must be set aside if they are unreasonable.

9  Defendants argue that "[t]his exact issue was briefed, argued, and

10  decided as part of the summary judgment proceedings that Plaintiffs

11  now ask the Court to reconsider."    ECF No. 337, at 2.    Defendants

12  contend that the Court may still grant summary judgment on the basis

13  that the agreements were unreasonable and should not be enforced.

14       The Court finds Defendants' arguments unpersuasive.    Although

15  some aspects of the summary-judgment briefing may have addressed the

16  reasonableness of the restrictive covenants, these arguments were

17  raised in the context of an assignability analysis.    "[W]hether

18  assignment would create additional burdens on the employee because of

19  the change in ownership," *Fitness Experience*, 355 F. Supp. 2d at 889,

20  is, to be sure, one factor of the assignability analysis.    But if the

21  Court finds that the totality of factors support a finding of non-

22  assignability, the inquiry ends: the noncompete provision may not be

23  enforced.    On the other hand, under a reasonableness analysis, "a

24  covenant not to compete which imposes unreasonable restrictions upon

25  an employee *will be enforced* to the extent necessary to protect the

26  employer's legitimate interests."    *Raimonde v. Van Vlerah*, 325 N.E.2d

544, 547 (1975) (emphasis added).   In other words, under a reasonableness analysis, the Court may modify or amend the terms of the RSA to achieve a fair result. *See id.*  Thus, the standard of law governing these two legal tests — "additional burdens" versus "unreasonable restrictions" — are substantially different, as are the remedies.

On this basis, the Court concludes that the briefing provided in support of Defendants' summary-judgment motions did not adequately address whether the RSA's restrictive covenants are unreasonable. And even if the Court had received adequate briefing from Defendants on the issue of reasonableness, Plaintiffs correctly point out that they cannot fully respond to this issue for the first time in a reply memorandum.  In sum, the Court is persuaded that "it is improper for a court to grant summary judgment on [a legal argument] not raised by the moving party." *John Deere Co. v. American Nat. Bank, Stafford*, 809 F.2d 1190, 1191-92 (5th Cir. 1987).  If Defendants wish to seek summary judgment on the issue of reasonableness, they must do so by separate motion, with full briefing and with sufficient opportunity for Plaintiffs to respond.  The Court declines to consider the merits of Defendants' argument based on the record presently before the Court, and therefore finds no basis to grant summary judgment. Defendants' motions for summary judgment are denied.

## IV.  CONCLUSION

The Court's earlier decision granting partial summary judgment to Defendants was predicated on a finding that under Ohio law, the RSA's restrictive covenants could not be assigned following the merger

1  of PNC and National City.  The Ohio Supreme Court has since vacated

2  its prior holding on this point, concluding instead that a noncompete

3  provision transfers by operation of law following a merger.

4  Accordingly, the Court finds sufficient grounds to reconsider its

5  prior opinion and grants Plaintiffs' motion for reconsideration.

6      Upon reconsideration, the Court's March 6, 2012 Order granting

7  partial summary judgment is hereby vacated, and the First and Fourth

8  Claims of the First Amended Complaint, ECF No. 181, are reinstated.

9  Plaintiffs' alternate motion for entry of partial final judgment is

10 denied as moot.  And for the reasons set forth above, Defendants'

11 Motions for Partial Summary Judgment, ECF No. 203 & 204, are denied.

12 However, because those summary-judgment motions were predicated on the

13 argument that the RSA's restrictive covenants were not assignable, the

14 Court expresses no opinion about whether Defendants may seek and

15 obtain summary judgment on other grounds, including on the issue of

16 reasonableness.

17     The discovery cut-off of November 5, 2012, has passed, and the

18 dispositive motions deadline of April 26, 2013, is fast approaching.

19 The Court is unsure whether, following this ruling, the parties will

20 require additional time for discovery, an extension of the dispositive

21 motions deadline, and/or a continuance of the pretrial conference and

22 trial date.  Accordingly, the parties shall confer and file a joint

23 status report, **by no later than March 22, 2013**, indicating what – if

24 any – scheduling accommodations may be necessary.

25 //

26 //

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT – 16

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.    Plaintiffs' Motion for Reconsideration, **ECF No. 335**, is
3          **GRANTED.**

4    2.    The Court's March 6, 2012 Order granting Defendants'
5          motions for partial summary judgment, **ECF No. 249**, is
6          **VACATED.**  The First and Fourth Claims of the First Amended
7          Complaint, ECF No. 181, are reinstated.

8    3.    Plaintiffs' Motion for Entry of Partial Final Judgment
9          Pursuant to Fed. R. Civ. P. 54(b), **ECF No. 321**, is **DENIED**
10         **AS MOOT.**

11   4.    Defendant Thomas's Motion for Partial Summary Judgment, **ECF**
12         **No. 203**, is **DENIED.**

13   5.    Defendants Prime Lending, Inc. and Kale Salman's Motion for
14         Partial Summary Judgment, **ECF No. 204**, is **DENIED.**

15   6.    **By no later than March 22, 2013**, the parties shall confer
16         and file a joint status report, indicating what – if any –
17         scheduling accommodations may be necessary in light of the
18         foregoing ruling.

19   **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this
20   Order and provide copies to all counsel.

21   **DATED** this  11<u>th</u>  day of March 2013.

22
                          s/ Edward F. Shea
23   _____
                          EDWARD F. SHEA
                   Senior United States District Judge
24

25

26   Q:\EFS\Civil\2010\34.grant.reconsider.vacate.set-tsc.lc2.docx

ORDER GRANTING RECONSIDERATION, VACATING MARCH 6, 2012 ORDER,
DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND
DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT - 17